275 N.J. Super. 575 (1994)
646 A.2d 1121
PHYLLIS J. AVALLONE, PLAINTIFF-RESPONDENT,
v.
HAROLD J. AVALLONE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1994.
Decided August 15, 1994.
*576 Before Judges MICHELS, SKILLMAN and WEFING.
Irene U. Mecky argued the cause for appellant (Carlet, Garrison & Klein, attorneys; Ms. Mecky, on the brief).
Marlyn E. Quinn, argued the cause for respondent (Quinn & Kallich, attorneys; Ms. Quinn, on the brief).
The opinion of the court was delivered by WEFING, J.S.C. (temporarily assigned).
Defendant-husband Harold J. Avallone appeals to this court from a post-judgment order of the Chancery Division, Family Part, which directed that the New York State and Local Police and Fire Retirement System ("Retirement System") deduct $956.38 per month from his disability pension and remit the same to the plaintiff Phyllis J. Avallone, his former spouse, pursuant to the provisions of an amended Qualified Domestic Relations Order ("QDRO").
The parties were married in 1967; they were divorced pursuant to a judgment of divorce entered on February 26, 1988. That judgment provided in part:
IT IS FURTHER ORDERED that a QDRO be entered with respect to each parties' pension. Each party shall share equally in that portion of the other party's benefits which were acquired and vested during the marriage, that is from *577 November 12, 1967 through March 19, 1987, including all contributions to the plans by both the employee and employer[.]
At the time this judgment of divorce was entered, defendant was employed as a Port Authority police officer and was a vested participant in the Retirement System under which he would be entitled to retire after twenty years of service and receive a pension equal to one-half of his final average salary. However, since he had not completed twenty years of service by the time the parties were divorced, that right had not yet matured.
After the parties' divorce, defendant continued working for the Port Authority as a police officer. In April 1989, he was injured on the job and placed on light duty. More than a year later, in August 1990, which was more than two years after the parties were divorced, defendant sustained a second injury while on the job. For some ten months he received sick pay but when those benefits were exhausted, and he was still unable to return to work, he was retired as permanently disabled on June 22, 1991. At that point, he had accumulated 18.87 years of service credit and thus was not eligible to receive a full retirement pension. Although the Retirement System allowed participants with more than ten but less than twenty years of service to receive a retirement pension, this pension could not be activated until the participant had achieved at least fifty-five years of age. At the time defendant was retired for disability, he was forty-four years old.
Although defendant was precluded from receiving either type of retirement pension since he had neither completed twenty years of service nor attained the age of fifty-five, he did qualify for a disability pension. His initial monthly benefit was $1,750. Following a determination that his disability was the natural and proximate result of a work-related accident, defendant's monthly disability payment was set at $2,869.14. N.Y. Retire. & Soc. Sec. Law § 363 (McKinney 1994). This figure represents three-quarters of the salary defendant was receiving at the time of his termination and thus exceeds the amount he would have received as a retirement pension had he been entitled to receive such a *578 pension as of that date. Defendant will receive this sum for so long as he is unable to work.
We are informed that the Retirement System has no provision or mechanism to convert defendant's disability pension into a retirement one, even though the payments he receives are substantially in excess of that which he would have received under ordinary retirement. He may potentially receive that higher sum for the remainder of his life.
We are further informed that the parties have both remarried. Defendant is thus no longer obligated to pay alimony although there is an outstanding issue as to whether he has satisfied his child support obligations. Since both parties have relocated to Florida, they have agreed to have all child support questions decided by a Florida court. We are also informed that although defendant has been declared disabled from working, plaintiff, who is forty-six, is earning nearly $30,000 a year as a teacher in Florida. Within their certifications to the trial court, the parties disputed whether she is accumulating a retirement pension in that position.
The language which was employed in the original judgment of divorce providing for the entry of a QDRO did not comply with the requirements of the Retirement System. This led to the entry of an Amended Qualified Domestic Relations Order on February 3, 1992 which provided in part:
ORDERED that at such time as Participant has retired from and is actually receiving a retirement allowance from the New York State and Local Police and Fire Retirement System Pension Plan, the said New York State and Local Police and Fire Retirement System Pension Plan, in accordance with the Equitable Distribution Law, and in accordance with the formula devised in the case of Majauskas v. Majauskas [61 N.Y.2d 481, 474 N.Y.S.2d 699, 463 N.E.2d 15 (1984)] is directed to pay to Alternate Payee [i.e., plaintiff] from Participant's [i.e., defendant's] retirement 50% of a fraction of participant's maximum monthly retirement allowance prior to any optional modification; and it is further
ORDERED, [that] the numerator shall be the number of months that the participant was in the plan during coverture (November 12, 1967  March 19, 1987) and the denominator shall be the total number of months of service credit in the New York State and Local Police and Fire Retirement System which Participant has at the time of retirement.
*579 When this Amended Order was served on the Retirement System, it immediately began to deduct one-half of defendant's disability pension, or $1,434.57, each month and send it to the plaintiff. Defendant then filed a motion with the trial court seeking, among other forms of relief, an order directing the Retirement System to stop all such deductions. The trial court refused to issue the requested order, but did modify the amount to be deducted by the Retirement System. The trial court concluded that if defendant had retired after twenty years of service, he would have received a pension equal to one-half his final average salary and that plaintiff would have been entitled to fifty percent of this income. The trial court further concluded that since defendant's final average salary at the time he went on disability was $45,906.24, plaintiff should receive one-half of fifty percent of that figure, or $956.38 per month.
On appeal, defendant analogizes his disability pension to an award for personal injuries, which would not be subject to equitable distribution to the extent it represented compensation for the victim's pain, suffering and disability. Landwehr v. Landwehr, 111 N.J. 491, 545 A.2d 738 (1988). He also contends that his pension is equivalent to a worker's compensation award which may also be excluded from equitable distribution. Lentini v. Lentini, 236 N.J. Super. 233, 565 A.2d 701 (App.Div. 1989).
We do not consider either case completely dispositive of the rights of these parties, however. In Landwehr, the parties were married in 1959 and separated in 1981. Some three years prior to their separation, defendant-husband was injured in an automobile accident. The attorney retained to represent both parties in connection with that accident negotiated a total settlement of $26,000. As part of the equitable distribution attendant to the divorce, the trial court concluded that plaintiff-wife was entitled to receive from that settlement the amount intended to cover her per quod claim and one-half of the amount intended to reimburse her former husband for his lost wages; the balance, the trial court concluded, was to be distributed to the defendant. This court *580 reversed, concluding that the entire settlement proceeds were marital property subject to equitable distribution. The Supreme Court, however, disagreed, holding that only that portion of a personal injury award which represents reimbursement for marital assets lost due to a spouse's injury should be subject to equitable distribution. Landwehr, supra, 111 N.J. at 502, 545 A.2d 738. Because both Mr. Landwehr's award for pain and suffering and Mrs. Landwehr's award for her per quod claim represented compensation for their own respective personal losses as a result of the accident, the Supreme Court ruled that they did not represent marital assets or property and were not distributable.
The following year, this court concluded that the underlying principles of Landwehr applied with full force to one spouse's claim for worker's compensation benefits since the purpose of a worker's compensation award is to provide an "injured worker a measure of economic security during the period of time he is recuperating from a work-related accident, and further compensate[] him for permanent disability which reduces his future earning capacity." Lentini v. Lentini, supra, 236 N.J. Super. at 235, 565 A.2d 701 (quoting General Motors Acceptance Corp. v. Falcone, 130 N.J. Super. 517, 520, 327 A.2d 699 (Dist.Ct. 1974)). The record in Lentini does not indicate whether the claim for worker's compensation benefits arose prior to the parties' separation, as in Landwehr, or subsequent to the parties' divorce, as in the present matter.
The only reported opinion in New Jersey which deals with whether a disability pension is subject to equitable distribution is Kruger v. Kruger, 73 N.J. 464, 375 A.2d 659 (1977). Kruger is not controlling here, however, for several reasons. The disability pension at issue in Kruger was a military disability pension to which special principles apply. Kruger, moreover, was decided prior to McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which reached a contrary result. Finally, as the Supreme Court noted in Landwehr, Kruger was based upon a *581 version of our equitable distribution statute which the Legislature subsequently amended. Indeed in Kruger the Court referred with seeming approval to DiTolvo v. DiTolvo, 131 N.J. Super. 72, 328 A.2d 625 (App.Div. 1974), which held that the proceeds of a personal injury award were marital property and subject to equitable distribution. Landwehr, supra, of course, reached a contrary conclusion. For all of these reasons, we do not consider Kruger binding upon us as an intermediate court.
Case law in other jurisdictions, however, has recognized that disability pensions are not entirely comparable to retirement pensions.
[D]isability benefits may serve multiple purposes. They may compensate for the loss of earnings resulting from compelled premature retirement and from a diminished ability to compete in the employment market. Disability benefits may also serve to compensate the disabled person for personal suffering caused by the disability. Finally, disability benefits may serve to replace a retirement pension by providing support for the disabled worker after he leaves his job.
[Ciliberti v. Ciliberti, 374 Pa.Super. 228, 542 A.2d 580, 582 (1988).]
Other courts have also recognized the multiple functions served by a disability pension. See In re Marriage of Stenquist, 21 Cal.3d 779, 148 Cal. Rptr. 9, 582 P.2d 96 (1978).
Courts in other jurisdictions have reached differing conclusions as to whether disability pensions are subject to equitable distribution. See, e.g., Dolan v. Dolan, 78 N.Y.2d 463, 577 N.Y.S.2d 195, 583 N.E.2d 908 (1991) (husband's ordinary disability pension, which had commenced some years prior to the parties' divorce, and which had a ten year service credit requirement, represented some portion of deferred compensation and was subject to equitable distribution); Mylett v. Mylett, 163 A.D.2d 463, 558 N.Y.S.2d 160 (1990) (disability pension which commenced prior to divorce and prior to vesting of husband's ordinary retirement pension was subject to equitable distribution to the extent it represented deferred compensation; to the extent it represented compensation for the injured spouse's injuries, it was not; matter remanded to determine appropriate allocation); West v. West, 101 A.D.2d 834, 475 N.Y.S.2d 493, 494 (1984), aff'd, 115 A.D.2d 601, 496 N.Y.S.2d 263 (1985) ("[W]here a disability pension may, in part, represent *582 deferred compensation, it is indistinguishable from a retirement pension and is, to that extent, subject to equitable distribution."); Newell v. Newell, 121 Misc.2d 586, 468 N.Y.S.2d 814 (Sup.Ct. 1983) (husband's disability pension which commenced prior to divorce, but after he was eligible for ordinary retirement pension, was distributable on a percentage basis); Hoffner v. Hoffner, 577 So.2d 703, 704 (Fla.Dis.Ct.App. 1991) ("... [A] disability pension upon which a spouse is presently receiving benefits, by its very nature replaces future lost income, and thus is not a marital asset subject to equitable distribution."); Ciliberti v. Ciliberti, supra (To the extent a disability pension compensates the recipient for his loss of earning capacity, it is not subject to equitable distribution; if any portion represents retirement benefits, it is distributable.); In re Marriage of Anglin, 52 Wash. App. 317, 759 P.2d 1224 (1988) (a disability pension which commenced prior to retirement pension eligibility, but after retirement pension vesting held to be community property but awarded solely to disabled spouse); Lachney v. Lachney, 529 So.2d 59 (La. Ct. App.), writ denied, 532 So.2d 764 (La. 1988) (disability payments pursuant to a disability insurance policy purchased by spouse's employer which specified that payments would cease at the earlier of the spouse's death or attaining age sixty-five contained no element of deferred compensation and were distributable in conjunction with the parties' divorce); In re Marriage of Leland, 69 Wash. App. 57, 847 P.2d 518, review denied, 121 Wash.2d 1033, 856 P.2d 383 (1993) (disability payments under disability insurance policies purchased with marital funds were the husband's separate property, as income replacement, until age sixty-five; thereafter they were pension income in which the wife was entitled to share).
We have considered, and rejected, the approach adopted in Hoffner v. Hoffner, supra. We consider it too narrow in light of the multiple objectives which may be served by disability pensions. See Ciliberti v. Ciliberti, supra. Were we to adopt that approach here, it would have the effect of permanently depriving plaintiff of any share of her former husband's pension. That would run counter to our recognition that marriage is, among other things, *583 an economic partnership and that pension benefits can be one of the largest assets of that partnership. Plaintiff should not be deprived of her right to participate in such a significant asset merely because it has been characterized as a disability pension rather than a retirement pension.
We have also considered, and rejected, the approach adopted in several of the New York cases referred to earlier which concluded that the portion of a spouse's disability pension which represented deferred compensation, and which should thus be distributed through divorce proceedings, could be determined purely on a percentage basis. See Dolan v. Dolan, supra; Newell v. Newell, supra. Such an approach treats a disability pension as identical to a retirement pension and thus disregards some of its essential purposes. Ciliberti v. Ciliberti, supra. Similarly, absent persuasive evidence to the contrary, we do not consider that the entitlement to share in such an asset should turn solely on the age of the disabled spouse. See In re Marriage of Leland, supra.
We believe that in light of the unique nature of a disability pension, there are a number of factors which should be taken into consideration before settling on a final distributable amount in this matter, and that the record which has been presented to us is insufficient to make that allocation. It is impossible for us to know, for example, whether the deferred compensation portion of defendant's disability pension, as opposed to compensation for loss of present wages, could be established through actuarial or economic proof. If the deferred compensation of defendant's pension may be so established, plaintiff would be entitled to participate in it.
Neither do we know whether, and to what extent, defendant contributed to the Retirement System. To the extent he did so, marital assets may have served to fund his disability benefits and it would only be equitable to permit plaintiff to share in them. In addition, the record contains references to defendant having filed a claim for worker's compensation benefits, but it does not contain the result of that claim. If defendant succeeded in a worker's *584 compensation proceeding, he may be required to reimburse the Retirement System to some extent. N.Y. Retire. & Soc. Sec. Law § 363 (McKinney 1994). This may also bear upon what would be equitable to distribute to plaintiff.
We also do not know how likely it was that defendant would have retired after twenty years of service if the accident had not intervened. Plaintiff's entitlement to share in these payments could be affected by the availability of such evidence. If defendant had planned to retire at that point, plaintiff may have a stronger claim to share now than if defendant had planned to continue working, in which event there would have been no pension payments to allocate at this time.
The record is also silent as to whether these payments represent payment for medical expenses for treatment of the disabling condition. If so, that portion would also not be distributable.
We have thus concluded that it is necessary to remand this matter to the trial court for further proceedings, the object of which will be to determine that portion of defendant's disability pension which represents a retirement component in which plaintiff would be entitled to share, and that portion which represents compensation for defendant's personal disability and personal economic loss.
We note our disagreement with the trial judge's utilization of the pension formula governing retirement for those individuals with twenty years of service since defendant did not have twenty years of service with the Port Authority at the time he went on disability and the record contained no evidence that defendant had intended to retire when he first became eligible to receive a retirement pension.
Finally, we reiterate the principle enunciated in Landwehr, supra, that
`the burden of establishing ... immunity [from equitable distribution] as to any particular asset will rest upon the spouse who asserts it.' Accordingly, the injured spouse will have the burden of showing what portion of his or her award represents compensation for his or her pain, suffering and disabilities.... To the extent that *585 the parties fail to prove a portion of the award represents their separate property, it shall be classified as a marital asset, subject to equitable distribution.
[Landwehr v. Landwehr, supra, 111 N.J. at 504, 545 A.2d 738 (quoting Painter v. Painter, 65 N.J. 196, 214, 320 A.2d 484 (1974)).]
Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.