933 A.2d 956 (2007)
396 N.J. Super. 290
Michael STERNESKY, Plaintiff-Respondent,
v.
Ana Cecilia SALCIE-STERNESKY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 2007.
Decided October 22, 2007.
*958 Robert J. Lenrow, Oradell, argued the cause for appellant.
Donna J. Vellekamp, Fort Lee, argued the cause for respondent (Ms. Vellekamp, *959 attorney and on the brief; Sandra Wilson Moss, on the brief).
Before Judges COBURN, FUENTES and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
A final judgment divorcing plaintiff Michael Sternesky and defendant Ana Cecilia Salcie-Sternesky was entered on June 16, 2006. Although the parties were able to resolve many of the issues, they could not agree on equitable distribution of plaintiff's accidental disability retirement allowance awarded by the Board of Trustees of the Police and Fire Retirement System (PFRS) or on the amount of child support. Those questions were tried to and decided by a judge of the Family Part, who determined that plaintiff's pension allowance was non-distributable income and set child support based on defendant's current income and plaintiff's retirement allowance plus imputed income. Defendant appeals. For reasons stated in Section I of this opinion, it is clear that there is a component of plaintiff's pension allowance that is subject to equitable distribution. Accordingly, we reverse and remand. Defendant's objections to the child support order and the relevant evidence are discussed in Section II of this opinion.

I
The judgment we review was entered prior to this court's decision in Larrison v. Larrison, 392 N.J.Super. 1, 919 A.2d 852 (App.Div.2007), which addresses distribution of an ordinary disability retirement allowance awarded to a member of PFRS. Previously, in Avallone v. Avallone, 275 N.J.Super. 575, 646 A.2d 1121 (App.Div. 1994), this court confronted the problem of equitably distributing a disability retirement pension upon divorce. In both cases, we recognized that a disability retirement allowance has two components  one that represents a retirement allowance and is subject to equitable distribution to the extent attributable to marital efforts and another that represents compensation for disability and belongs to the disabled spouse alone. Larrison, supra, 392 N.J.Super. at 16-18, 919 A.2d 852; Avallone, supra, 275 N.J.Super. at 584, 646 A.2d 1121. In Larrison, we encouraged the Board of Trustees of PFRS to provide information that would permit courts to identify the components of a disability pension. 392 N.J.Super. at 18, 919 A.2d 852. The Board has not done so. In Larrison and Avallone, we stressed the need for parties to present evidence that permits segregation of the component of a disability pension that is a retirement asset and part of the marital estate from the component that is designed to compensate the disabled spouse and is part of his or her individual property. Larrison, supra, 392 N.J.Super. at 16-18, 919 A.2d 852; Avallone, supra, 275 N.J.Super. at 584, 646 A.2d 1121. In this case, the attorneys argued for the all-or-nothing approach that favored their respective clients. Recognizing the difficulty of the position of a trial judge who is left to equitably distribute an accidental disability retirement allowance awarded to a member of PFRS without guidance from the Legislature or the Board of Trustees or evidence from the parties, we provide a formula, inferable from the statutory scheme and decision of our courts addressing equitable distribution of retirement assets, that a judge should apply in the absence of official guidance or relevant evidence.
The following facts are pertinent to equitable distribution of plaintiff's pension. When the parties married in 1998, both had college degrees. Plaintiff was employed *960 in a job he had held since 1996, dispatcher for the Englewood Fire Department. He was enrolled in PFRS. Defendant was employed in her field. In April 2000, Englewood appointed plaintiff to the position of firefighter. In December 2003, plaintiff was hospitalized as a consequence of injuries he sustained while fighting a fire. Although he sought counseling to address post-traumatic stress, when he visited a firehouse or the scene of a fire, he was too anxious to remain. Plaintiff commenced this action for divorce in July 2005, and he was awarded an accidental disability retirement allowance effective December 1, 2005. Plaintiff is thirty-eight years of age, and defendant is thirty-five.
The parties agreed to a division of their marital assets and personal property, other than plaintiff's retirement allowance. They divided the equity in the marital residence equally.
Peter Gorman, an executive assistant with the Division of Pensions in the Department of Treasury, testified on defendant's behalf. Gorman described the various pensions available to members of PFRS. His description provided little information beyond what is disclosed by a review of the statutes authorizing pensions for members of PFRS. Gorman noted that plaintiff's accidental disability pension was not divided into separate components consisting of retirement benefits and funds intended as compensation for traumatic injury and the resulting disability. He explained that this retirement allowance is the same, two-thirds of the member's final salary, regardless of the member's age, years of service or contributions to the pension fund. According to him, the benefit is not taxed by the federal government because it is treated as if it were a worker's compensation benefit. Gorman reported that plaintiff contributed "roughly" $28,000 to the pension fund before his retirement and did not qualify for a pension allowance based on age or years of service.
The trial judge determined that plaintiff's pension is income and not a marital asset subject to equitable distribution. In the alternative and after considering the statutory factors relevant to division of martial property, N.J.S.A. 2A:34-23.1, the trial judge determined that even if a portion of the pension allowance were deemed to be an asset subject to equitable distribution, defendant would not be entitled to a share.
The basic principles governing the identification of retirement assets that are part of the marital estate and subject to equitable distribution are clear. In general, the portion of a pension that is "legally or beneficially acquired" during a marriage is subject to equitable distribution. Larrison, supra, 392 N.J.Super. at 14, 919 A.2d 852; see N.J.S.A. 2A:34-23(h). The marital portion of a pension is identified from the "perspective of when and how the pension was earned or acquired." Whitfield v. Whitfield, 222 N.J.Super. 36, 44, 535 A.2d 986 (App.Div.1987). "[A] pension plan [is] a form of deferred compensation for services rendered." Id. at 45, 535 A.2d 986. Because both spouses contribute to the earning of pension rights by participating in the marriage, "both justifiably expect[] to share the future enjoyment of the pension benefits. . . ." Id. at 46, 535 A.2d 986. The fact that the employee's right to a pension has not vested or matured at the time of divorce does not extinguish the non-pensioner's interest in the portion of this asset earned during the marriage. Moore v. Moore, 114 N.J. 147, 156-57, 553 A.2d 20 (1989). Nor are pension benefits attributable to work during the marriage shielded from equitable distribution because they are in pay status. *961 See, e.g., Avallone, supra, 275 N.J.Super. at 579, 646 A.2d 1121.
As noted above, a pension benefit that is based in part on the retiree's disability presents special questions because the allowance is not solely attributable to a benefit for work done prior to retirement. As Larrison explains: there is a portion of a disability retirement allowance "that serves to compensate the pensioner-spouse for . . . disability and economic loss [that] should not be subject to equitable distribution." 392 N.J.Super. at 16, 919 A.2d 852; see Avallone, supra, 275 N.J.Super. at 580-84, 646 A.2d 1121 (discussing the multiple purposes of a disability pension). Segregation of the components of any disability retirement allowance requires the court to address "the non-pensioner spouse's legitimate claims to a marital asset, without attaching funds intended to compensate the pensioner-spouse for his or her disabilities." Larrison, supra, 392 N.J.Super. at 18, 919 A.2d 852.
Neither the statute establishing this pension nor the Board of Trustees that administers the plan identifies the separate components of this disability pension. Nonetheless, a comparison of this pension and others available to members of PFRS discloses the dual purpose of this retirement benefit.
An employee qualifies for an accidental disability retirement allowance only if, "as a direct result of a traumatic event" occurring during and resulting from performance of duties, the employee is "incapacitated" for his or her present duty or any other duty that the police or fire department is willing to assign. N.J.S.A. 43:16A-7(1). The allowance is two-thirds of final compensation regardless of the employee's age, years of service or contributions to the pension fund. N.J.S.A. 43:16A-7(2). The allowance includes, but is not dependent upon, an annuity that is "the actuarial equivalent of [the officer's] aggregate contributions." N.J.S.A. 43:16A-7(2)(a). That annuity is subsumed in and part of that allowance. See N.J.S.A. 43:16A-7(2)(b). Thus, an employee who is disabled as a consequence of a qualifying accident early in his or her career receives the same percentage of final salary as one who has worked for many years prior to a qualifying disabling injury.
Benefits payable under other PFRS pensions are not as generous and, to varying degrees, are dependent upon years of service, age and contributions to the pension fund. Where a member is disabled but the disability is not the result of a qualifying accident, a retirement allowance is available only if the member has a minimum of four years of service. N.J.S.A. 43:16A-6. The benefit is a minimum of forty percent of final compensation and may be higher depending on years of service. Ibid. An ordinary retirement allowance, based solely on the member's age, years of service and contributions to the fund is also available. N.J.S.A. 43:16A-5. That benefit ranges from fifty percent to sixty-five percent of final salary depending upon years of service and age. Ibid. No benefit, other than return of contributions, is available to an employee who leaves employment without qualifying for a pension. N.J.S.A. 43:16A-11.
It is apparent that the enhanced benefit for accidental disability retirement (two-thirds of final salary as opposed to one-half of final salary for ordinary retirement at the earliest time) is intended to ensure income for a member disabled due to traumatic injury in the performance of duties that pose an inherent risk of such injury. The enhanced benefit for injury of this sort is reasonably viewed as part of the incentive for accepting employment of the sort offered to members of the PFRS system.
*962 It is also clear, however, that this retirement benefit includes all the compensation an injured member will receive for credits earned toward retirement benefits. The accidental disability retirement allowance is awarded in lieu of and not in addition to any ordinary retirement benefit. Thus, it serves as a more generous substitute for the ordinary retirement allowance toward which the employee earned credits during his or her career. It also guarantees a return on retirement credit earned during the marriage regardless of length of service when early retirement is caused by a disabling injury due to a traumatic event during performance of duties. From the perspective of a recipient of an accidental disability retirement allowance and his or her spouse, any expectation of receipt of an ordinary retirement allowance is included in the two-thirds benefit. Depending on the date of the qualifying accident, that retirement allowance may be earned early in the member's career, when there is a low expectation of an ordinary retirement allowance and a great need for compensatory income, or after many years of service, when there is a greater expectation of a substantial retirement allowance based on credit earned and a diminished need for compensation intended to replace years of lost earnings. Although an accidental disability retirement allowance is the same in both cases, the expectations are different. The longer the period of service, the greater the expectation of a benefit based on retirement credits earned during the marriage.
In Larrison, we held that the absence of guidance from the Legislature or PFRS as to the portion of a pension allowance that is attributable to compensation for the officer's disability "cannot result in unjustly and improperly subjecting the full amount of a disability pension to equitable distribution upon divorce." 392 N.J.Super. at 18, 919 A.2d 852. In Avallone, we held that it would "run counter to our recognition that marriage is . . . an economic partnership" to permanently deprive the spouse of any share of the retirement asset just because it is, in part, a disability pension. 275 N.J.Super. at 582-83, 646 A.2d 1121.
In the absence of guidance or evidence relevant to the segregation of the components of an accidental disability retirement allowance awarded to a member of PFRS of the sort suggested in Larrison and Avallone, we conclude that a trial court should apply the following formula, which is inferable from the statutory scheme and decisions of our courts considering equitable distribution of retirement assets, to segregate the component of the allowance that is a martial asset. Larrison, supra, 392 N.J.Super. at 18, 919 A.2d 852; Avallone, supra, 275 N.J.Super. at 583-84, 646 A.2d 1121. In Avallone, we declined to adopt a formula utilized by New York courts because that formula treated disability pensions and ordinary pensions identically. 275 N.J.Super. at 583, 646 A.2d 1121. Our formula recognizes and gives affect to the distinction.
As discussed above, the accidental disability retirement allowance is based on a greater percentage of final salary than an ordinary pension available to a member of PFRS. Because that excess percentage is best viewed as compensation for the disabling injury, it should be reserved for the disabled spouse. While the spouse of the retiree can be deemed to contribute to retirement credits earned during the marriage, the same cannot be said of that portion of the allowance that exceeds the ordinary retirement allowance and is awarded only to one disabled as a result of a qualifying injury. Accordingly, the ordinary retirement allowance amount must be isolated and the excess preserved.
*963 Where the member of PFRS is injured late in his or her career and is eligible for ordinary retirement, the amount of an ordinary retirement allowance can be isolated by calculating the benefit in accordance with the statute. N.J.S.A. 43:16A-5. That approach will identify the anticipated return on the member's contributions and credits toward retirement.
The question is more difficult where, as in this case, the employee is not yet eligible for ordinary retirement. Considering the expectation interest in retirement allowance, we conclude that when the employee is not yet eligible for ordinary retirement, the ordinary retirement allowance should be calculated at fifty percent of the member's final salary. Fifty percent of final salary is the amount of an ordinary retirement at the earliest date. N.J.S.A. 43:16A-5. Final salary is also the figure used to calculate the accidental disability benefit. Use of that percentage and salary, absent evidence or guidance suggesting otherwise, will recognize the reasonable expectation that the non-pensioner spouse has in sharing in a retirement benefit based on efforts during the marriage. The injury to the disabled spouse should neither enhance nor diminish the value of the investment interest anticipated on the basis of efforts during the marriage.
After identifying the ordinary retirement allowance and preserving for the retiree the excess allowance based on accidental disability, i.e., the percentage of final salary above the percentage payable on ordinary retirement, the court must further identify the portion of that allowance that is attributable to service during the marriage. The goal is to identify that component of the disability pension that recognizes the non-pensioner spouse's legitimate claim to a marital asset. Larrison, supra, 392 N.J.Super. at 18, 919 A.2d 852.
When our courts identify the marital portion of a pension that is not yet vested or in pay status for the purpose of determining the amount that will be distributed to the non-pensioner spouse when payments are received, our courts employ a coverture fraction. See Claffey v. Claffey, 360 N.J.Super. 240, 256, 822 A.2d 630 (App.Div.2003) (discussing the formula and its use when distribution of a pension is deferred). In that context, the coverture fraction consists of a numerator equivalent to service during the marriage and a denominator equivalent to total years of service. The fraction reflects the relationship between the credits earned during the marriage and total credits earned, including those earned prior to and after the marriage.
A variation of the coverture fraction is needed to fairly segregate the components of a retirement allowance awarded to a member of PFRS based on accidental disability. While length of service during the marriage is the appropriate measure of marital efforts, length of actual service is not the proper measure of the grounds for an accidental disability retirement allowance. There would be no pension benefit but for a disabling injury that cut the years of service short. In this context, the measure that reasonably recognizes the relationship between efforts during the marriage and total efforts required for return on that investment is the length of service that would have been required for an ordinary retirement allowance but for the disabling injury. Setting aside a disabling injury, the non-employee spouse's reasonable expectation, while his or her spouse is earning retirement credits, is no greater than a share of a retirement allowance based on service during the *964 marriage in proportion to the years of service needed for an ordinary pension.
On that basis, we conclude that after determining the ordinary retirement allowance and subtracting the excess benefit based on accidental disability, the court should identify the martial component by multiplying the ordinary retirement allowance by a fraction, with a numerator equivalent to service during the marriage and a denominator equivalent to service required for an ordinary retirement allowance. The results will recognize the "non-pensioner spouse's legitimate claims to a marital asset, without attaching funds intended to compensate the pensioner-spouse for his or her disabilities." Larrison, supra, 392 N.J.Super. at 18, 919 A.2d 852.[1] Where the disabled employee spouse has served for many years earning retirement credits, a significant portion of the pension will be deemed a marital asset, consistent with the expectations of the spouses while retirement credits were being earned. In a case where the period of service is brief and the award is, for the most part, reasonably attributable to the disabling injury, a relatively small portion of the pension will be treated as marital property. In both cases, the excess benefit available only to those who are disabled as a consequence of traumatic injury during the performance of duties will be preserved for the retiree.
This approach will not deprive a spouse who was dependent upon the retiree's income of needed support. To the extent that the non-pensioner spouse is in need of alimony, the portion of the pension not deemed to be a marital asset will be available for alimony. See N.J.S.A. 2A:34-23 (insulating that portion of a pension subject to equitable distribution). With respect to their children, all income and assets of both parties will be considered for child support. See Caplan v. Caplan, 182 N.J. 250, 264-65, 864 A.2d 1108 (2005).
Nor can we conclude that the early receipt of a share of the retirement benefits will result in a windfall to the non-pensioner spouse. Where the disabling injury is early in the pensioner's career, the allowance will presumably be based on a final salary that is lower than the member would have earned at the end of a long career. Viewed in this light, early payment permits continued growth of the investment in much the same way as a deferred distribution of the marital portion of a contingent pension right. Consistent with the expectation of the parties during the marriage, retirement credits earned through marital efforts, while collected earlier, are preserved at a rate no greater than they would have expected in the event of a disabling accident.
*965 In summary, we hold that in the absence of specific evidence or official guidance permitting a more precise segregation of the components of an accidental disability pension awarded by PFRS, a court should utilize the formula discussed above to segregate the marital portion of the allowance from the portion best viewed as compensation to the individual for the disabling injury. After identifying the value of the marital share, the court must distribute the portion of the retirement benefit attributable to efforts during the marriage in accordance with the statutory criteria. N.J.S.A. 2A:34-23.1.
We reject the trial judge's alternate ground for denying defendant any share of plaintiff's pension. The trial judge determined that even if a portion of the pension were subject to equitable distribution, defendant would not be entitled to any share. In balancing the statutory factors relevant to equitable distribution and concluding that an award of any portion of this asset would "result in an inequitable windfall to" defendant, the court did not consider the deferral of income and the contributions made during the marriage or the relative value of the parties' retirement assets. See Rothman v. Rothman, 65 N.J. 219, 232-33, 320 A.2d 496 (1974) (describing a three-step process that requires identification and valuation of marital assets prior to distribution based on the statutory factors); N.J.S.A. 2A:34-23.1 (stating the factors). The portion of this retirement allowance that is a marital asset may be small, but it is not non-existent.
Defendant also argues that the trial judge erred in declining to qualify Gorman as an expert witness. The trial judge reserved decision as to whether Gorman could offer an expert opinion pending a specific question, and defendant points to no opinion that was excluded. Our review of the record convinces us that this claim lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
We reverse and remand for determination of the portion of this pension that is a marital asset and for equitable distribution of that portion.

II
The following evidence is relevant to defendant's claim that the trial court erred in fixing child support. The parties' first child was born in September 2001 and their second child was born in December 2004.
At the time of their divorce, plaintiff and defendant agreed to share legal and residential custody of their children equally. They further agreed that neither parent would be considered the primary caretaker or the parent of primary residence. Plaintiff agreed to provide child care needed during defendant's work hours so long as he remained unemployed. The parties further agreed that their allocation of the economic burdens of child-rearing and equal division of custodial time would be best addressed by averaging the result of two child support calculations based on shared parenting  one allocating the financial responsibilities of the parent of primary residence to plaintiff and one allocating that responsibility to defendant.
Defendant is employed in sales and marketing and earns $45,000 per year. Plaintiff is unemployed and receives a retirement allowance of approximately $56,000 per year. After his accident, he attempted to visit a firehouse and the scene of a fire. On both occasions he became anxious and was unable to remain. He suffers from flashbacks.
Defendant presented the testimony of an employability expert to establish plaintiff's ability to resume gainful employment outside the fire department. The expert *966 interviewed plaintiff and administered aptitude tests. Based on the testing and information plaintiff provided about his education and work experience, which included landscaping, house repair, managing an office and social work, the expert concluded that he could find employment in the field of fire prevention and earn between $31,000 and $41,000 per year. Although the expert concluded that plaintiff could inspect and sell equipment and do training and planning related to fire prevention and response, she acknowledged that she had not considered whether plaintiff's post-traumatic stress would prevent him from working in these capacities.
The trial judge did not accept the expert's opinion on plaintiff's ability to work in the field of fire prevention. He imputed income of $25,000 based on plaintiff's ability to do work such as house repair and landscaping.
Defendant contends that the court erred in imputing income of only $25,000 to plaintiff. Imputation of income is left to the sound discretion of the trial judge based on the evidence presented. Tash v. Tash, 353 N.J.Super. 94, 99-100, 801 A.2d 436 (App.Div.2002). Although defendant's expert testified that plaintiff could earn more than the imputed amount if he accepted employment in his field, she also acknowledged that she had not considered the impact of his anxiety. We cannot conclude that the trial judge's decision so lacks support in the record as to warrant our interference.
Defendant also claims that the trial judge erred by considering plaintiff's PFRS file, which was produced by Gorman on the trial judge's request, but she points to no determination based upon inadmissible evidence included in that file. Even if we were to conclude that the court erred, defendant has failed to show how the error could have had an impact on the outcome of this trial. See R. 2:10-2.
Although the trial judge accepted the parties' agreement to base child support on the average of two support figures based on shared-parenting, as defendant correctly notes, the trial judge did not employ consistent numbers in performing the separate child support calculations. The parties agreed to share the tax exemptions for their children. The trial judge's first calculation assumes that defendant will have four tax allowances and plaintiff will have one. The second calculation assumes that plaintiff will have five allowances and defendant will have one. The trial judge also included in the child support calculations the estimated cost of work-related child care, but one calculation assumes that plaintiff will pay that cost and the other assumes that defendant will make the payment. The inconsistencies impact the fairness and adequacy of the child support award, which is based on an average of the two calculations.
Finally, defendant argues that the trial judge erred in declining to order child support paid through income withholding and the appropriate agency. Absent agreement or a finding of good cause for a different arrangement, child support must be paid in that manner. N.J.S.A. 2A:17-56.8; R. 5:7-5(b).
Reversed and remanded for further proceedings.
NOTES
[1] We provide the following example to illustrate application of the formula. Assume a qualifying, traumatic disabling injury after ten years of service, all of which were during the marriage, and assume a final salary of $60,000. The accidental disability allowance would be $40,000. N.J.S.A. 43:16A-7 (2/3 of final salary). The ordinary retirement allowance would be $30,000. N.J.S.A. 43:16A-5. The difference, $10,000, is preserved for the retiree.

To identify the portion attributable to service during the marriage, the $10,000 preserved for the retiree is subtracted from $40,000, leaving $30,000. The $30,000 difference is then multiplied by 10/20 (years of service during the marriage/years of service required for ordinary retirement). The product, $15,000, is the portion attributable to service during the marriage and subject to equitable division between the spouses. Assuming, for purposes of illustration only, an equal division, the non-retiree spouse would receive $7500 of the $40,000 accidental disability retirement allowance. If there were only five years of service during the marriage, the marital portion would be 5/20 of $30,000, or $7500 for division between the spouses, and, assuming an equal division, the non-retiree spouse would receive $3750.