# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0262-20

J.A.M.,[1]

    Plaintiff-Appellant,

v.

S.J.G.,

    Defendant-Respondent.

_____

> Argued September 29, 2021 – Decided October 25, 2021
>
> Before Judges Whipple, Geiger, and Susswein.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0286-19.
>
> Jared A. Geist argued the cause for appellant.
>
> Daniel B. Tune argued the cause for respondent (Martin & Tune, LLC, attorneys; Daniel B. Tune, of counsel and on the brief).

PER CURIAM

---

[1] We use initials to protect the victim of domestic violence. See R. 1:38-3(d)(10).

Plaintiff J.A.M. appeals from an August 13, 2020 Family Part post-dissolution order which granted, in part, and denied, in part, cross-motions to reconsider child support, custody and parenting time, distribution of assets, and various other calculations from the June 29, 2020 Dual Judgment of Divorce and Final Judgment After Trial (JOD) between plaintiff and defendant S.J.G. Neither party appealed the JOD.

Plaintiff and defendant were married on April 25, 2015, and share a son. In December 2018, plaintiff secured a final restraining order (FRO) against defendant after an incident of domestic violence, leading to the filing of cross-complaints for divorce. On September 26, 2019, the court issued a pendente lite order that defendant

> provide 50% of her 401k to [p]laintiff's attorney immediately . . . . [Defendant] shall immediately contact the appropriate entity to liquidate and divide the net amount with [plaintiff]. The parties shall use these monies first to pay the experts (or reimburse the party who is documented to have paid the experts) and then to pay counsel.

On November 18, 2019, the court issued another order after defendant did not liquidate her 401(k) account and did not "provide [p]laintiff with 50% of her 401(k) after the experts are paid . . . ." The motion court instead ordered

defendant to divide the funds "as soon as it becomes practicable for the [qualified domestic relations order (QDRO)] to be issued."

The case was tried before a different judge, who entered the JOD on June 29, 2020, addressing on the record the issues of custody, parenting time, alimony, child support, and equitable distribution of assets and debts. It also ordered that defendant's 401(k) would remain defendant's sole property, not subject to reallocation.

On July 13, 2020, defendant filed a motion for reconsideration of the JOD, asking, in pertinent part, that the court reconsider calculation of the child support guidelines to include alimony paid to plaintiff and for modification of parenting time. Defendant contended the court erred in using an incorrect parenting guideline worksheet, and she presented a modified sole parenting guidelines worksheet that proposed increasing plaintiff's child support obligation to defendant from $10 to $156 per week. Defendant also asked the court to alter the parenting plan to modify the hours of the Wednesday dinner visit. Plaintiff filed an untimely cross-motion asking to be designated the parent of primary residence (PPR), for modification of parenting time and child support, adjustment of her imputed income from $60,000 to $25,000, and disbursement of $24,926 from defendant's 401(k).

3

On August 13, 2020, the court issued an order modifying and recalculating child support to account for plaintiff's two other dependents. This recalculation of overnights, alimony, and change in the child support guidelines worksheet—from "shared" to "sole" parenting—resulted in an increase in child support payable to defendant from $10 to $156 per week.

The court denied both parties' requests for modification of parenting time and denied plaintiff's request that she receive $24,926 out of defendant's 401(k). Plaintiff's request for reduction of her imputed income from $60,000 to $25,000 was also denied. Plaintiff appealed.

Rule 4:49-2 addresses a party's motion to alter or amend a judgment or order. It states that:

> [A] motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall be served not later than [twenty] days after service of the judgment or order upon all parties by the party obtaining it. The motion shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

[R. 4:49-2.][2]

A decision to reconsider an order must be exercised in the interests of justice. D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990) (citing Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257, 263 (App. Div. 1987)). We will not reverse a trial court's decision on imputed income and alimony unless the trial court "abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004).

We overturn a trial court's denial of a motion for reconsideration only in the event the court abused its discretion. Marinelli v. Mitts & Merrill, 303 N.J. Super. 61, 77 (App. Div. 1997). In determining whether abuse of discretion has occurred, we note that "[a] litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." D'Atria, 242 N.J. Super. at 401.

---

[2] The judge in his Statement of Reasons explained that he would not consider requests for reconsideration in plaintiff's cross-motion that did not "relate back to defendant's motion" because plaintiff had filed her cross-motion out of time. In doing so, the court nevertheless amplified the original order on its merits. We accordingly evaluate the trial judge's decisions to the same extent, as they relate to defendant's timely filed motion for reconsideration. See R. 1:6-3(b).

A-0262-20

Plaintiff argues on appeal that the court erred because it did not reconsider reallocation of parenting time between the parties and that the trial court applied an incorrect legal analysis and did not account for the child's best interests. Plaintiff also argues that under N.J.S.A. 9:2-4(c), the trial court did not properly consider the FRO against defendant. Without citing to case law or a specific statute, plaintiff asserts that "[i]n the domestic violence statute, there is a presumption that the abused should get custody." This argument is unavailing.

The record establishes that the court properly set forth its findings under all fourteen N.J.S.A. 9:2-4(c) factors in the underlying oral record and in his June 29, 2020 written decision accompanying the JOD. The court's August 13, 2020 Order Reconsidering Child Support addressed the parties' parenting plan, granted defendant's request to recalculate child support, and denied both parties' various other requests.

Plaintiff did not appeal the JOD; nevertheless, she argues that the trial court abused its discretion in transferring primary physical custody of the child to defendant during the school year. Here, the court placed findings on the record and in a written statement, which fully explained its reasoning regarding custody. The JOD ordered joint custody with defendant as the PPR

and plaintiff as parent of alternate residence. Plaintiff asserts no reason why the trial court's denial of her request for reconsideration constitutes an abuse of discretion other than her dissatisfaction with the original determination. The court denied both parties' requests to reconsider the parenting time during the school year, stating that "[t]he parties are free to expand and modify parenting time arrangements in the best interests of the child." This reflects the degree of flexibility and practicality the court encouraged in the JOD regarding how joint parenting would be effectuated within the best interests of the child framework.

Next, we reject the assertion that the trial court did not account for the parties' history of domestic violence. The Prevention of Domestic Violence Act (PDVA) mandates that at an FRO hearing, the Family Part must consider the victim's safety "in determining custody and parenting time . . . ." N.J.S.A. 2C:25-29(a)(5). In addition, "the court shall presume that the best interests of the child are served by an award of custody to the non-abusive parent." N.J.S.A. 2C:25-29(b)(11).

Defendant argues that this presumption applies only in actions involving the PDVA—not a resulting divorce trial itself. We agree. "The DV Act applies the presumption only in 'proceedings in which complaints for

A-0262-20

restraining orders have been filed.'" R.K. v. F.K., 437 N.J. Super. 58, 64 (App. Div. 2014) (quoting N.J.S.A. 2C:25-29(b)).  This court further noted in R.K. that the presumption has been applied "only in appeals from initial FROs."  Id. at 64-65.  Therefore, the presumption for custody with plaintiff does not arise in this divorce action.

We stated in Grover v. Terlaje, 379 N.J. Super. 400 (2005), that this "presumption weakens as time passes without any conduct which can be said to jeopardize the 'non-abusive spouse' or the child."  Id. at 407.  This court decided in Grover that the provisions of a final JOD, including specific custody arrangements, are left "to the sound discretion of the trial court."  Id. at 407-08 (quoting Nufrio v. Nufrio, 341 N.J. Super. 548, 555 (App. Div. 2001)).

Here, while the full details of the underlying FRO trial are not included in the record, the domestic violence history between the parties was thoroughly discussed in the court's June 29, 2020 oral decision at the conclusion of trial. The trial court made extensive factual findings regarding the parties' history of domestic violence, and it did not abuse its discretion or fail to take this into account in its custody decision.  We discern no reason to revisit the court's determination on custody of the child.

A-0262-20

We also reject plaintiff's argument here that "[e]quality in treatment for the [one parent] should not be obtained by requiring the [other parent] to pay an inappropriately high level of support for [the] child[]." Harte v. Hand, 433 N.J. Super. 457, 462 (App. Div. 2013). The court must apply the child support guidelines when it calculates or modifies child support. Ibid. "The 'guidelines may be modified or disregarded by the court only where a good cause is shown.'" Ibid. (quoting R. 5:6A). Although the JOD is not under review in this appeal, we discuss it to explain the actions taken by the court in granting in part and denying in part the prayers for relief in the reconsideration motion.

When the court calculates the amount of child support that must be paid by a supporting parent, N.J.S.A. 2A:34-23(a) requires the trial judge to consider these factors:

> (1) Needs of the child;
> (2) Standard of living and economic circumstances of each parent;
> (3) All sources of income and assets of each parent;
> (4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
> (5) Need and capacity of the child for education, including higher education;
> (6) Age and health of the child and each parent;
> (7) Income, assets and earning ability of the child;

9

(8)     Responsibility of the parents for the court-ordered support of others;

(9)     Reasonable debts and liabilities of each child and parent; and

(10)   Any other factors the court may deem relevant.

[N.J.S.A. 2A:34-23(a).]

In awarding child support, "[i]mputation of income is left to the sound discretion of the trial judge based on the evidence presented."  Sternesky v. Salcie-Sternesky, 396 N.J. Super. 290, 307-08 (App. Div. 2007) (citing Tash v. Tash, 353 N.J. Super 94, 99-100 (App. Div. 2002)).

"The trial court has substantial discretion in making a child support award.  If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice."  Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (quoting Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001)).   "'Of course, the exercise of this discretion is not limitless[,]' and remains guided by the law and principles of equity."  Ibid. (quoting Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004)).  "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'"  Ibid.  (quoting Flagg v. Essex Cnty. Prosecutor, 171

10

N.J. 561, 571 (2002)) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). "[W]e note we are not bound by '[a] trial court's interpretation of the law' and do not defer to legal consequences drawn from established facts." Id. at 116-17 (quoting Manalapan Realty, L.P., v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)) (alteration in original).

In reaching his final decision after trial, the trial judge specifically considered several of the factors in N.J.S.A. 2A:34-23(a). The judge reviewed the parties' debt and both parties' income; in addition, he took these factors into account when calculating alimony. He also considered plaintiff's own testimony in the divorce trial as to how much she would be able to earn after her newly acquired civil service qualification. The motion record does not demonstrate that the trial court's conclusion plaintiff would be able to earn $60,000 was based on a failure to consider controlling legal principles. The court similarly did not rest upon findings inconsistent with or unsupported by

competent evidence. Thus, we do not consider it an abuse of discretion for the court to deny plaintiff's request to lower her imputed income to $25,000.[3]

In the JOD, the court had calculated plaintiff's imputed income as $60,000, and the court had ordered plaintiff to pay defendant $10 per week in child support. The shared-parenting Child Support Guidelines Worksheet was attached to that order; the $10 calculation was based on plaintiff having 108 overnights, and therefore 29.6% of overnights per week.

Upon reconsideration, the trial court granted plaintiff's request to modify the child support calculation to include her two other dependent children. The judge also granted defendant's request to reconsider child support to include alimony payments to plaintiff. The court also reviewed its calculation of overnights and found that plaintiff had 103 overnights, not 108. The judge reasoned that he mistakenly used the shared-parenting worksheet rather than the 'sole' worksheet during the initial calculation of child support.

The sole-parenting worksheet "shall" be used when there is "shared parenting (PAR Time) below the substantial equivalent of two or more

---

[3] Plaintiff asserts, with no supporting evidence, that "it must be noted that [she] did not testify that she could get work in this pay range—she even said she was not sure." Again, the record before this panel only includes the trial judge's decision, which references plaintiff's testimony that she would be able to earn $60,000.

overnights per week (28% of overnights) . . . ." Pressler & Verniero, <u>Use of the Child Support Guidelines</u>, Appendix IX-B, at 1144 (2021). The "shared" worksheet "shall be used if the Parent of Alternate Residence has the child for the substantial equivalent of two or more overnights per week, excluding extended PAR Time (e.g., vacations) and has shown that separate living accommodations for the child are provided in the alternate household . . . ." <u>Id.</u> at 1144-45.[4]

Plaintiff argues the trial court erred using the sole-parenting worksheet because of "the 2/3 and 1/3 parenting time arrangement ordered." Plaintiff has been designated the parent of alternate residence and was granted 103 overnights in 2021. This amounts to plaintiff having 28.2% of 365 overnights total in 2021.

The trial judge stated in his reconsideration order that he "mistakenly selected the 'shared' worksheet option, which is generally used for 50/50 split parenting situations, rather than the 'sole' worksheet option during the initial calculation of child support."

---

[4] The sole-parenting instructions define the "substantial equivalent" of two or more overnights per week as 28%, <u>id.</u> at 1144, whereas two out of seven equals 28.6%. Plaintiff was granted 28.2%.

The judge's observation of the shared-parenting worksheet is not accurate and may call for a different result. Plaintiff has 28.2% of overnights, which is more than 28% of overnights, cited above as the substantial equivalent of two or more overnights per week. Two overnights per week, however, equals 28.6% of overnights. Because the trial judge did not provide a full explanation for why he chose to use the sole-parenting worksheet, we are constrained to remand for the trial judge to evaluate which worksheet is most appropriate; include a rationale for that decision; and recalculate the child support if necessary, reviewing the testimony from trial as to what living arrangements are provided for the child at plaintiff's residence.

Finally, we reject plaintiff's argument that the court erred in denying distribution of defendant's 401(k) funds. The trial court "has broad discretion . . . in allocating assets subject to equitable distribution." Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012). Plaintiff contends that the trial court overlooked a previous order for defendant to divide and disburse her 401(k) account and argues that the court did not conduct proper analysis under N.J.S.A. 2A:34-23 to determine appropriate equitable distribution.

The judge explained in his written support of the reconsideration order that in the underlying divorce action, he determined that "this is not an

equitable distribution of asset case. This is an equitable distribution of debt case. There really isn't anything left." He further noted that the parties had "around [$]100,000" in debts and liabilities, of which the court allocated 75% to defendant and 25% to plaintiff.

Plaintiff argues the trial judge was required to enforce the prior judge's pendente lite order that stated the 401(k) could not be liquidated until the entrance of a QDRO (i.e., until final divorce judgment). However, the trial court found that the 401(k) "was previously [de facto] distributed pendente lite, and I'm going to award the balance of that asset to [defendant]." In the trial court's written decision on the JOD, he stated that "[t]he marital portion of defendant's Vanguard 401k was previously distributed pendente lite. The court will not reallocate it. As such, this 401k account is defendant's sole property."

In its written decision on reconsideration, the court reiterated that it had "saddled defendant with 75% of the parties' considerable debt, much of it at the insistence of plaintiff, and it would be grossly inequitable to award any portion of defendant's 401k to plaintiff under these circumstances."

Plaintiff has not shown an abuse of the court's discretion in its denial of her request to reconsider the division of the 401(k).

Affirmed in part; remanded for re-evaluation of the appropriate child

A-0262-20

support worksheet to use consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                    A-0262-20