NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1263-11T1

PATERSON POLICE PBA
LOCAL 1 and PATERSON
POLICE PBA LOCAL 1
SUPERIOR OFFICERS
ASSOCATION,

    Plaintiffs-Respondents,

v.

CITY OF PATERSON, a municipal
corporation of the State
of New Jersey,

    Defendant-Appellant.

| APPROVED FOR PUBLICATION |
| :---: |
| November 27, 2013 |
| APPELLATE DIVISION |

_____

Argued April 29, 2013 — Decided November 27, 2013

Before Judges Graves, Espinosa and Guadagno.

On appeal from Superior Court of New Jersey,
Chancery Division, General Equity Part,
Passaic County, Docket No. C-33-11.

Brian W. Kronick argued the cause for
appellant (Genova, Burns, Giantomasi &
Webster, attorneys; Mr. Kronick, of counsel;
David K. Broderick and Brett M. Pugach, on
the briefs).

Mark C. Rushfield argued the cause for
respondents (Shaw, Perelson, May & Lambert,
LLP, attorneys; Mr. Rushfield, of counsel
and on the brief).

Robert Fagella argued the cause for amicus
curiae New Jersey State Police Benevolent

Association (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Paul L. Kleinbaum, of counsel and on the brief; Marissa A. McAleer, on the brief).

Eileen Schlindwein Den Bleyker, Senior Deputy Attorney General, argued the cause for amicus curiae Division of Local Government Services and New Jersey Department of the Treasury, Division of Pensions and Benefits (Jeffrey S. Chiesa, Attorney General, attorney; Robert Lougy, Assistant Attorney General, of counsel; Ms. Den Bleyker, on the brief).

Matthew Weng, Staff Counsel, argued the cause for amicus curiae New Jersey State League of Municipalities (William J. Kearns, Jr., General Counsel, attorney; Mr. Weng, on the brief).

Craig S. Gumpel argued the cause for amicus curiae New Jersey State Firefighters' Mutual Benevolent Association (Fox & Fox, LLP, attorneys; Mr. Gumpel, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

After collective negotiation agreements (CNAs) between defendant City of Paterson and plaintiffs, Paterson Police PBA Local 1 and Paterson Police PBA Local 1 Superior Officers Association,[1] expired, the parties engaged in compulsory interest

---

[1] Plaintiffs Paterson Police PBA Local 1 (PBA) and Paterson Police PBA Local 1 Superior Officers Association (SOA) are public sector labor organizations organized under the laws of the State of New Jersey. The PBA is the collective bargaining representative for all rank-and-file police officers of the City of Paterson, and the SOA is the collective bargaining
(continued)

arbitration. The resulting award required, in part, that police officers "shall make contributions toward health insurance coverage in the amount of 1.5% of base salary" pursuant to L. 2010, c. 2. Defendant interpreted base salary as an officer's base pensionable salary and made deductions accordingly. Plaintiffs initiated this action, contending that "base salary" meant base contractual salary and excluded additional items of compensation such as longevity, educational incentives, and night and detective differentials. The trial judge agreed with plaintiffs and entered judgment in their favor.

Although base salary was not defined in either the statute or the award, it was defined in a subsequent statute that was applicable to the award here. See N.J.S.A. 34:13A-16.7. In the absence of any statement to the contrary, we assume the arbitrator used the term "base salary" as directed by the Legislature. Therefore, and for the reasons that follow, we agree with defendant's interpretation of the interest arbitration award and reverse.

I.

On February 8, 2010, the Legislature introduced Senate Bill Numbers 2, 3, and 4, which were passed and signed into law on

(continued)
representative for all superior police officers in the ranks of sergeant through deputy chief.

March 22, 2010.  The three bills implemented some of the recommendations of the Joint Legislative Committee on Public Employee Benefits Reform, Final Report (Dec. 1, 2006) (Final Report),[2] which was created to identify "proposals that will terminate abuses of the pension systems and control the cost of providing public employee retirement, health care and other benefits."  Id. at 1; see also Commc'ns Workers of Am. v. State of N.J., Dep't of Treasury, 421 N.J. Super. 75, 83 (Law Div. 2011).  The law at issue here, which provided changes to the health benefits program, was introduced as S. 3, enacted as L. 2010, c. 2, and codified as amended at N.J.S.A. 40A:10-21.  The two other bills provided changes to public pension benefits (S. 2, enacted as L. 2010, c. 1), and employee benefits (S. 4, enacted as L. 2010, c. 3).

In the Final Report, the Committee noted that its investigation of "health benefits issues revealed a system plagued by the skyrocketing costs of health care that have dramatically increased the cost of health benefits for both current and retired public employees."  Final Report, supra, at 57.  The Committee recommended forty-one reforms to public employee pensions, health care benefits, and other employee

---

[2]   Available at www.njleg.state.nj.us/PropertyTaxSession/OPI/jcpe_final_report.pdf (last visited on Nov. 20, 2013).

benefits, which it found were long "overdue." Id. at 2-5. With regard to health care costs, the Committee recommended that the Legislature require all active public employees and future retirees to pay some portion of the cost of their health insurance premiums. Id. at 113-18. The resulting legislation was "designed to improve the fiscal strength of State and local governments, reduce taxpayer burdens, and ensure the health and pension systems remain viable for current and future employees."[3] Commc'ns Workers of Am., supra, 421 N.J. Super. at 83.

L. 2010, c. 2, added subsection (b) to N.J.S.A. 40A:10-21. As amended, N.J.S.A. 40A:10-21(b) provides:

> Commencing on the effective date [May 21, 2010] of P.L. 2010, c. 2 and upon the expiration of any applicable binding collective negotiations agreement in force on that effective date, employees of an employer shall pay 1.5 percent of base salary, through the withholding of the contribution from the pay, salary or other compensation, for health care benefits coverage provided pursuant to N.J.S. 40A:10-17, notwithstanding any other amount that may be required additionally pursuant to subsection a. of this section for such coverage.

---

[3] In June 2011, the Legislature enacted a successor health benefits law, L. 2011, c. 78 (codified in part at N.J.S.A. 40A:10-21.1), that requires all public employees, including employees covered under local unit self-insured programs, to contribute to their health benefits based on a percentage of the cost of coverage, and not base salary, which shall under no circumstances be less than 1.5% of an employee's base salary.

"Base salary" is not defined under the statute.  Adding to the resulting ambiguity is the fact that the employee's contribution is made "through the withholding of the contribution from the <u>pay, salary or other compensation</u>." <u>N.J.S.A.</u> 40A:10-21(b) (emphasis added).  No administrative regulations defining the term "base salary" were promulgated under the amended statute.

However, guidelines were published by the State Department of the Treasury, Division of Pensions and Benefits (DPB), and the New Jersey Department of Community Affairs, Division of Local Government Services (DLGS) to be provided to the affected groups.  DLGS was established in the Department of Community Affairs under the Local Government Supervision Act (1947), <u>N.J.S.A.</u> 52:27BB-1 to -23, and exercises regulatory and supervisory powers over local governments.  It is authorized to "assist local government in the solution of its problems, and plan and guide needed readjustments for effective local self-government."  <u>N.J.S.A.</u> 52:27BB-6.  To this end, the Director of DLGS may provide instruction to local government units through Local Finance Notices (LFNs).  <u>N.J.A.C.</u> 5:30-1.8.

DLGS issued LFN 2010-12 to provide "guidance for complying with" <u>N.J.S.A.</u> 40A:10-21(b) to local units, such as defendant, that provide non-State Health Benefits Program (SHBP) coverage.

LFN 2010-12 highlighted important elements of the law and included Frequently Asked Questions (FAQs) in which it defined "base salary" as the "salary on which pension contribution . . . is based."  This definition was consistent with the definition of base salary in a statewide informal guideline issued by the DPB for the administration of SHBP.[4]

Defendant sought to comply with the dictates of N.J.S.A. 40A:10-21 by following LFN 2010-12.  Accordingly, it deducted 1.5% of base pensionable salary from all its employees' pay as their contribution toward their health benefits.

## II.

Prior to the enactment of N.J.S.A. 40A:10-21(b), plaintiffs and defendant were parties to two separate CNAs, which governed the terms of employment of all member police officers, including salary ranges by step and rank, and percentage increases for longevity.  Officers assigned as detectives received an annual $2000 "detective differential" that was "payable bi-weekly in addition to their base pay."  An officer who worked the night shift received a five percent "night differential," as part of his or her "regular base salary," and an officer who completed eighteen years of service received an annual "base salary

_____

[4]  See also New Jersey State League of Municipalities' website, http://www.njslom.org/letters/ml042110-pensions.html  (last visited Nov. 20, 2013).

increase" of $2000. As part of his or her "regular salary," an officer received an "education incentive reimbursement" in the amount of $22.50 for each credit hour earned toward a degree or certificate. Officers also received periodic compensation for overtime, court attendance, rescheduled duty tours, clothing and equipment allowances, and off-duty assignments. Under the agreement, officers paid deductibles for medical care, but did not contribute toward the cost of their health insurance benefit.

Because the parties were unable to negotiate successor agreements, their CNAs expired on July 31, 2008, and they submitted to compulsory interest arbitration pursuant to N.J.S.A. 34:13A-16 with New Jersey Public Employment Relations Commission (PERC). Hearings were conducted by an arbitrator in October 2009. On February 17, 2011, the arbitrator issued an Interest Arbitration Decision and Award, which established the terms of the CNAs between the parties for August 1, 2008, to July 31, 2012. The arbitration award set a new salary schedule and modified the longevity schedule, but continued the provisions of the prior agreements regarding educational incentives, and night and detective differentials.

The arbitration award recognized the applicability of the amendment to N.J.S.A. 40A:10-21. Noting that neither party

"made a proposal regarding employee co-payments toward health insurance," the arbitrator nevertheless took "official notice of an act by the New Jersey Legislature requiring the payment of 1.5% of base salary towards health insurance effective May 21, 2010." Accordingly, the award included the following language in Article 31:

> Pursuant to P.L. 2010, c. 2, unit employees shall make contributions toward health insurance coverage in the amount of 1.5% of base salary. This level of employee contribution shall be inclusive of, rather than in addition to, any statutory obligation towards an employee's requirement to make contributions toward the payment of health insurance.

Neither party filed an appeal of the award to PERC.

After the arbitrator's award was issued, defendant began withholding 1.5% of each police officer's pensionable salary, retroactive to the effective date of the statute. Defendant calculated pensionable salary as base salary wages plus additional items of compensation, including longevity, educational incentives, and night and detective differentials, but not overtime pay. Plaintiffs filed a verified complaint to confirm the February 17, 2011, compulsory interest arbitration award pursuant to N.J.S.A. 34:13A-16, challenging defendant's calculation of base salary, as well as an order to show cause for summary action pursuant to Rule 4:67-1. Defendant filed an

answer and counterclaim, alleging that it had withheld 1.5% of each employee's "pensionable salary" in accord with LFN 2010-12. Defendant also sought modification or correction of the arbitrator's award to clarify that "it shall withhold 1.5% of pensionable salary in conformance with P.L. 2010, c. 2 . . . ."

The trial court held that defendant could not assert a counterclaim to "modify the award" because it failed to appeal the arbitrator's decision to PERC and because defendant failed to establish grounds for such modification pursuant to N.J.S.A. 2A:24-9. The court found the award was "still subject to confirmation . . . as written on its face." The court concluded that the "clear and common meaning of the term 'base salary' in P.L. 2010, c. 2" excluded "additional payments or allowances . . . such as overtime pay, educational incentives, detective and night differentials, and longevity pay." The court entered final judgment, ordering defendant to "immediately adjust the deductions taken from its police employees' wages to reflect a deduction of 1.5% of 'base salary' for health contributions, excluding from 'base salary' such benefits as longevity, overtime, educational incentives, and night and detective pay differentials." The judge also ordered defendant to refund the amounts in excess of that definition previously deducted from police officers' salary.

The judge later issued an order that granted a stay as to retroactive excess deductions, but denied a stay of the prospective deductions. After defendant filed a notice of appeal, we granted defendant's motion for a stay.

III.

Defendant argues that the trial court erred in interpreting the term "base salary" as meaning base contractual salary, rather than "base pensionable salary," and thereby improperly excluded such additional items of compensation as educational incentives, detective and night differentials, and longevity pay from the calculation of base salary. Amici DLGS, DPB, and the State League of Municipalities support defendant's position. Amici New Jersey State Firefighters' Mutual Benevolent Association (FMBA) and New Jersey Policemen's Benevolent Association support plaintiffs' interpretation of base salary.

A.

The judgment, which enforced an arbitration award pursuant to N.J.S.A. 34:13A-19, turned upon the trial judge's interpretation of the term "base salary" in the arbitration award and, in effect, as used in N.J.S.A. 40A:10-21(b). When construing a law, a reviewing court conducts "a de novo review" and does not "accord any special deference to a trial court's interpretation." US Bank, N.A. v. Hough, 210 N.J. 187, 198

(2012). <u>See</u> <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 <u>N.J.</u> 366, 378 (1995).

B.

We first review the nature of the award that was the subject of interpretation by the trial court and now, in this appeal.

Compulsory interest arbitration, which is governed by the "Police and Fire Public Interest Arbitration Reform Act" (the Reform Act), <u>N.J.S.A.</u> 34:13A-14(a) to -19, provides a mechanism for the speedy resolution of collective negotiation disputes between police and fire departments and their employers. <u>Hillsdale PBA Local 207 v. Borough of Hillsdale</u>, 137 <u>N.J.</u> 71, 80 (1994). Arbitration conducted pursuant to the Reform Act is subject to a statutorily mandated procedure. The arbitrator must "decide the dispute based on a reasonable determination of the issues, giving due weight to [enumerated statutory factors] that are judged relevant for the resolution of the specific dispute." <u>N.J.S.A.</u> 34:13A-16(g); <u>see also</u> <u>In re City of Camden</u>, 429 <u>N.J. Super.</u> 309, 325 (App. Div.), <u>certif. denied</u>, 215 <u>N.J.</u> 485 (2013).

The arbitrator's decision is final and binding upon the parties. <u>N.J.S.A.</u> 34:13A-16(f)(5). There is, however, a procedure for appealing the decision to PERC. <u>See</u> <u>ibid.</u>

12

Although none of the parties appealed, they were permitted to seek enforcement of the decision in the Superior Court. N.J.S.A. 34:13A-19. In our view, the relief sought by defendant was not a modification of the award but rather, a clarification that use of the term "base salary" in the award was consistent with applicable law.

C.

The new Article 31 in the award explicitly referred to L. 2010, c. 2, reciting the requirement that employees contribute 1.5% of their "base salary" toward the cost of their health insurance. Therefore, to understand the meaning of "base salary" within the award, we must determine the meaning of that term in the statute.

The court's "task in statutory interpretation is to determine and effectuate the Legislature's intent." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009). Courts "look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." McGovern v. Rutgers, 211 N.J. 94, 108 (2012) (quoting Bosland, supra, 197 N.J. at 553).

As noted, "base salary" is not defined in the statute itself or in any administrative regulation promulgated to

13

implement the statute. Moreover, it is susceptible to multiple interpretations. "Salary" has been defined as "monies received by a person on a fixed and continuous basis, i.e., normally paid in regular periodic intervals in specific regular amounts." Koribanics v. Bd. of Educ. of Clifton, 48 N.J. 1, 6 (1966); Wilson v. Bd. of Trs. of Police and Firemen's Ret. Sys., 322 N.J. Super. 477, 481 (App. Div. 1998); see Black's Law Dictionary 1454 (9th ed. 2009) (defining salary "[a]s an agreed compensation for services . . . usually paid at regular intervals on a yearly basis"); but see Webster's II New College Dictionary 92 (1995) ("defining base pay" as "[a]n amount or a rate of compensation for a specified job or activity, excluding any other payments or allowances").

We therefore turn to "extrinsic evidence from which [we] hope[] to glean the Legislature's intent." Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 24 (2009) (citing Bedford v. Riello, 195 N.J. 210, 222 (2008)). "When a statute is subject to more than one plausible reading," the court's "role is 'to effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" Velazquez v. Jiminez, 172 N.J. 240, 256 (2002) (quoting State v. Hoffman, 149 N.J. 564, 578 (1997)). "Both the statute's words and its goals must be considered." Kas Oriental

Rugs, Inc. v. Ellman, 407 N.J. Super. 538, 569 (App. Div.), certif. denied, 200 N.J. 476 (2009).

Such extrinsic evidence properly includes legislative history and statutory context. See McGovern, supra, 211 N.J. at 108; TAC Assocs. v. N.J. Dep't of Envtl. Prot., 202 N.J. 533, 541 (2010). As we have noted, the enactment here was part of a comprehensive legislative effort to control costs by making changes to public employees' pension benefits, health benefits programs, and other benefits.

In addition, we have the benefit of other legislative action, enacted by the same legislative body in the same year as L. 2010, c. 2, which also served the legislative goal of controlling costs associated with public employees compensation and benefits. N.J.S.A. 34:13A-16.7[5] amended the provisions of the Reform Act applicable to compulsory interest arbitration involving police and firefighters, the arbitration that led to the award here. It imposed a two percent "cap" on police and firefighter arbitration awards issued from January 1, 2011 to April 1, 2014, pursuant to N.J.S.A. 34:13A-16.9.[6] In addition,

---

[5] L. 2010, c. 105, § 2 (effective Jan. 1, 2011).

[6] N.J.S.A. 34:13A-16.7(b) states:

> An arbitrator shall not render any award
> pursuant to [N.J.S.A. 34:13A-16] which, on
> (continued)

N.J.S.A. 34:13A-16.7(a) provides the definition for "base salary" to be used in police and firefighter arbitrations:

> "Base salary" means the salary provided pursuant to a salary guide or table and any amount provided pursuant to a salary increment, including any amount provided for longevity or length of service. It also shall include any other item agreed to by the parties, or any other item that was included in the base salary as understood by the parties in the prior contract. Base salary shall not include non-salary economic issues, pension and health and medical insurance costs.
>
> "Non-salary economic issues" means any economic issue that is not included in the definition of base salary.

---

(continued)

> an annual basis, increases base salary items by more than 2.0 percent of the aggregate amount expended by the public employer on base salary items for the members of the affected employee organization in the twelve months immediately preceding the expiration of the collective negotiation agreement subject to arbitration; provided, however, the parties may agree, or the arbitrator may decide, to distribute the aggregate monetary value of the award over the term of the collective negotiation agreement in unequal annual percentages. An award of an arbitrator shall not include base salary items and non-salary economic issues which were not included in the prior collective negotiations agreement.

As we have noted, neither party appealed the arbitration award to PERC and neither party contends that the award failed to comply with these limitations.

    A-1263-11T1

Significantly, the arbitration award here was not issued until February 17, 2011, after the effective date of N.J.S.A. 34:13A-16.7, and therefore was subject to these definitions.

"[T]he arbitrator in a public employment case is obliged to resolve [a dispute] in accordance with the law and the public interest." Commc'ns Workers of Am., Local 1087 v. Monmouth Cnty. Bd. of Soc. Servs., 96 N.J. 442, 453 (1984). If an award in a public sector case is contrary to existing law, it may be vacated by the court. N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 294 (2007); see, e.g., Monmouth Cnty. Bd. of Soc. Servs., supra, 96 N.J. at 453-55; In re City of Camden, supra, 429 N.J. Super. at 334; Jersey City Educ. Ass'n v. Bd. of Educ., 218 N.J. Super. 177, 188 (App. Div.), certif. denied, 109 N.J. 506 (1987).

The arbitrator was therefore required to employ the definition of "base salary" the Legislature mandated for use in making arbitration awards involving police and firefighters. Had he failed to comply with this statutory mandate, the award would be subject to being vacated. In the absence of any affirmative statement by the arbitrator to the contrary, we assume the arbitration award used the term "base salary" as directed by the Legislature in N.J.S.A. 34:13A-16.7(a).

We also note that, months before the award was rendered, DLGS issued LFN 2010-12 and sent it to all public employers to provide guidance for complying with L. 2010, c. 2. The FAQs in LFN 2010-12 advised, "'base salary' on which the 1.5% contribution is calculated" is the "salary on which pension contribution . . . is based." This definition was consistent with that contained in the guidelines published by DPB, also prior to the award, to assist public employers in complying with L. 2010, c. 2, regarding SHBP and the School Employees Health Benefits Program.

The guidelines issued by DLGS were informal in nature and not the equivalent of an administrative agency's interpretation of a statute it is empowered to enforce, which would warrant our "substantial deference." See Klumb, supra, 199 N.J. at 24-25; Baylor v. N.J. Dep't of Human Servs., 235 N.J. Super. 22, 37 (App. Div. 1989) (Petrella, P.J.A.D., dissenting), aff'd, 127 N.J. 286 (1990). Still, the guidelines merit our consideration because they represent the practical interpretation of the statute by the agency charged with instructing local governmental units on how they were to comply with the new law. Id. at 36-37.

The Legislature did not disavow the interpretation adopted by DLGS and DPB. Generally, "the fact that the Legislature has

not acted in response to an agency's interpretation . . . is 'granted great weight as evidence of its conformity with the legislative intent.'" Klumb, supra, 199 N.J. at 24-25 (quoting Malone v. Fender, 80 N.J. 129, 137 (1979)). That conformity is evident by the Legislature's action in enacting N.J.S.A. 34:13A-16.7 after the guidelines were issued and effectively adopting the same definition of base salary for use in police and firefighter arbitration. It is, therefore, reasonable to infer that the arbitrator was aware of the applicable guidelines from DLGS as well as the statute that governed the arbitration here and acted in conformity therewith.[7]

The orders dated October 12 and November 3, 2011, are reversed because the arbitration award must be enforced consistent with the definition of "base salary" contained in N.J.S.A. 34:13A-16.7(a).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7]  We note further that the definition of "base salary" we find applicable here has the salutary effect of serving a "longstanding" legislative goal to provide "uniformity in health benefits among all government employees." Commc'ns Workers of Am., supra, 421 N.J. Super. at 96-97