NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1979-14T3

BRICK TOWNSHIP PBA LOCAL 230
and MICHAEL SPALLINA,

    Plaintiffs-Appellants,

v.

TOWNSHIP OF BRICK,

    Defendant-Respondent.
_____

| APPROVED FOR PUBLICATION |
| :---: |
| **June 21, 2016** |
| **APPELLATE DIVISION** |

Argued May 16, 2016 — Decided June 21, 2016

Before Judges Lihotz, Fasciale and Higbee.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Docket No. L-
2815-13.

Stephen B. Hunter argued the cause for
appellants (Detzky, Hunter & DeFillippo,
LLC, attorneys; Mr. Hunter, of counsel and
on the brief).

Louis N. Rainone argued the cause for
respondent (DeCotiis, FitzPatrick & Cole,
LLP, attorneys; Mr. Rainone and Victoria A.
Flynn, of counsel and on the brief).

Paul L. Kleinbaum argued the cause for
amicus curiae New Jersey State Policemen's
Benevolent Association (Zazzali, Fagella,
Nowak, Kleinbaum & Friedman, attorneys; Mr.
Kleinbaum and Marissa A. McAleer, of counsel
and on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

In this declaratory judgment action, Brick Township PBA Local 230 (PBA Local 230) and Michael Spallina (collectively plaintiffs) appeal from a November 13, 2014 order granting summary judgment to the Township of Brick (the Township). Spallina retired as a police officer on accidental disability. The order required Spallina to contribute to the cost of his health insurance provided as a benefit along with disability retirement payments. The judge concluded that Spallina's obligation was required by N.J.S.A. 40A:10-21.1, L. 2011, c. 78, § 42, effective June 28, 2011 (Chapter 78).

Plaintiffs argue Chapter 78 does not require Spallina to make contributions towards the cost of his health insurance premiums because his retirement was due solely to a disability. The Township contends Chapter 78 excludes from the obligation to contribute to the cost of health care benefits, only those employees completing twenty or more years of public service by the effective date of Chapter 78. We granted amicus status to the New Jersey State Policemen's Benevolent Association (State PBA), which urges we reverse the court's decision, emphasizing Chapter 78 does not require any public employee who retires with

disability retirement benefits to make contributions towards the cost of his or her health care insurance premiums.

We hold that Chapter 78 does not require ordinary or accidental disability retirees to make premium payments for health insurance benefits. Therefore, we reverse the order under review, remand, and direct the judge to address plaintiffs' contention, raised in the complaint, that Spallina is entitled to reimbursement for his prior health insurance premium contributions.

I.

PBA Local 230 is the recognized majority representative for all non-supervisory police officers employed by the Township. Spallina worked as a Township police officer from 1994 to 2012. The Township, a municipal corporation, is a public employer within the meaning of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -14.

PBA Local 230 and the Township were parties to a collective negotiations agreement (CNA) covering terms and conditions of police officers within the Township from January 2012 through December 2015. Article XI, Paragraph 9 of the CNA provides:

> Any Officer who retires from the Township shall no longer have health insurance premium sharing responsibilities, except as in accordance with Chapter 2 and supplemented by Chapter 78 of Public Law 2011.

The Township is self-insured and its health insurance is administered by Horizon Blue Cross. The provision for health insurance coverage for employees and retirees, and the premium sharing requirements for employees and retirees, is governed by N.J.S.A. 40A:10-16 to -25.

In January 2011, Spallina sustained injuries in the line of duty. He applied for accidental disability retirement. The New Jersey Division of Pensions approved Spallina's application, effective October 1, 2012.

The Township advised Spallina he must continue making health insurance premium contributions to maintain his retiree health benefits coverage, based on Chapter 78. According to the Township, the obligations imposed by Chapter 78 extended to individuals who retired, whether because of years of service or disability.

Plaintiffs filed this declaratory judgment action pursuant to N.J.S.A. 2A:16-51 to -62, seeking a declaration from the court that Chapter 78 and Article XI, Paragraph 9 of the CNA do not require Spallina to continue making health insurance premium contributions to the Township because he was receiving a disability retirement. Plaintiffs also sought reimbursement for past health contributions remitted. The parties filed

stipulated facts and agreed adjudication would be by summary judgment.

The judge conducted oral argument, entered the order under review, and rendered a written opinion. The judge found the text of Chapter 78 to be clear and unambiguous. He concluded Chapter 78 exempted only employees with twenty or more years of service from the imposed contribution requirement. Because Spallina had less than twenty years of service, the judge concluded he was not entitled to Chapter 78's exemption.

On appeal, plaintiffs and the State PBA argue that the premise of the judge's conclusion, that Chapter 78 applies to disabled retirees, is fundamentally flawed. They maintain government employees who receive disability retirement benefits are not subject to Chapter 78, no matter their years of service. Accordingly, plaintiffs and the State PBA contend Spallina is relieved from health insurance premium sharing responsibilities pursuant to Article XI, Paragraph 9 of the CNA.

II.

The primary issue on appeal is whether Chapter 78 applies to government employees who receive disability retirement benefits. This is a matter of statutory interpretation to which we accord no deference to the trial judge's interpretive conclusions. Commerce Bancorp, Inc. v. InterArch, Inc., 417

N.J. Super. 329, 334 (App. Div. 2010) (citation omitted), certif. denied, 205 N.J. 519 (2011); see also Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995) (indicating that "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference" (citations omitted)).

Our paramount goal in interpreting a statute is to ascertain the Legislature's intent, and "generally[] the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citation omitted). When interpreting a statute, we give words "their ordinary meaning and significance." Tumpson v. Farina, 218 N.J. 450, 467 (2014) (quoting DiProspero, supra, 183 N.J. at 492). Only when the statutory language is ambiguous and yields more than one plausible interpretation do we turn to extrinsic sources, such as legislative history. DiProspero, supra, 183 N.J. at 492-93.

A.

The language in Chapter 78 plainly identifies which employees are subject to its requirements. Therefore, we need not turn to extrinsic sources to resolve the issue on appeal. State v. Shelley, 205 N.J. 320, 323 (2011) (stating that "[w]hen the Legislature's chosen words lead to one clear and unambiguous

result, the interpretive process comes to a close, without the need to consider extrinsic aids" (citation omitted)).

N.J.S.A. 40A:10-21.1 states, in part:

> (1) Notwithstanding the provisions of any other law to the contrary, public employees of an employer, as those employees are specified in paragraph (2) of this subsection, shall contribute, through the withholding of the contribution from the monthly retirement allowance, toward the cost of health care benefits coverage for the employee in retirement and any dependent provided pursuant to N.J.S.[A.] 40A:10-16 [to -34.3], unless the provisions of subsection c. of this section apply, in an amount that shall be determined in accordance with [N.J.S.A. 52:14-17.28c] . . . .
>
> (2) The contribution specified in paragraph (1) of this subsection shall apply to:
>
>> (a) employees of employers for whom there is a majority representative for collective negotiations purposes who accrue the number of years of service credit, and age if required, as specified in N.J.S.[A.] 40A:10-23,[1] or on or after the expiration

1 Pursuant to N.J.S.A. 40A:10-23(a), effective May 21, 2010, an employer was given discretion to

> assume the entire cost . . . of such coverage and pay all . . . of the premiums for employees a. who have retired on a disability pension, or b. who have retired after 25 years or more of service credit in a State or locally administered retirement system and a period of service of up to 25 years with the employer at the time of

(continued)

of an applicable binding collective negotiations agreement in force on that effective date, <u>and who retire on or after that effective date</u> or expiration date, excepting employees who elect deferred retirement, when the employer has assumed payment obligations for health care benefits in retirement for such an employee; and

. . . .

(3) Employees described in paragraph (2) of this subsection who have [twenty] or more years of creditable service in one or more State or locally-administered retirement systems on the effective date of <u>P.L. 2011</u>, <u>c.</u> 78 shall not be subject to the provisions of this subsection.

[<u>N.J.S.A.</u> 40A:10-21.1(b)(1)-(3) (emphasis added).]

The judge concluded that

[t]he plain text of Chapter 78 is clear and unambiguous. Employees who have creditable service of twenty or more years in one of the retirement systems on the effective date of Chapter 78 were exempted from the contribution requirements. Michael Spallina was an employee with less than twenty years of creditable service on June 28, 2011, the effective date of Chapter 78. [Spallina] was approved by [the Police and Firemen's Retirement System (PFRS)] for . . .

_____

(continued)
retirement, . . . or c. who have retired and reached the age of 65 years or older with 25 years or more of service credit in a State or locally administered retirement system.

accidental disability retirement after the effective date.

We respectfully disagree with the judge's interpretation of the scope of Chapter 78. First, subsection (b)(1) specifies that "employees of an employer" must contribute to the cost of health care benefits. The subsection provides a precise definition of "employees," namely those "specified in paragraph (2) of this subsection." For "employees of employers for whom there is a majority representative for collective negotiations purposes," paragraph two, in turn, states that the contribution requirement applies specifically to employees

> who accrue the number of years of service credit, and age if required . . . or on or after the expiration of an applicable binding collective negotiations agreement in force on that effective date, and who retire on or after that effective date or expiration date, excepting employees who elect deferred retirement, when the employer has assumed payment obligations for health care benefits in retirement for such an employee.
>
> [N.J.S.A. 40A:10-21.1(2)(a).]

Paragraph three then carves out from the definition of "employees" in paragraph two those who accrued twenty or more years of service by the effective date of Chapter 78, who need not contribute to their health insurance premiums. Thus, the plain language of Chapter 78 does not include employees who retire based on disability; instead, it offers a circumscribed

definition of the employees intended to be affected by the implementation of the statute, namely those who retire based on meeting the service requirements.

B.

While we conclude that a plain reading of the statute resolves the issue, extrinsic evidence bolsters our conclusion that the Legislature did not intend for disability retirees to contribute to their health insurance premiums pursuant to Chapter 78.

"The State-administered retirement systems are funded by: 1) contributions from employees' wages; 2) contributions from the State, as the employer; and 3) the return earned on invested assets." Berg v. Christie, 436 N.J. Super. 220, 231 (App. Div. 2014) (citations omitted), rev'd, __ N.J. __ (2016). PFRS members contribute a fixed percentage of their wages to the pension fund, which is then paid out to them upon retirement along with the State's designated contribution. "PFRS pensions . . . are dependent upon years of service, age and contributions to the pension fund." Sternesky v. Salcie-Sternesky, 396 N.J. Super. 290, 300 (App. Div. 2007) (citing N.J.S.A. 43:16A-6). N.J.S.A. 43:16A-5 governs service retirees, and sets forth when an employee may retire based on length of service. The statute provides employees over fifty-five "may retire on a service

retirement allowance," which is calculated in light of the member's total contribution and years of service. N.J.S.A. 43:16A-5(1)-(2). The statute also mandates sixty-five-year-old and over employees "shall be retired on a service retirement allowance . . . , except that a member hired prior to January 1, 1987 may remain a member of the system until the member attains age 68 years or 25 years of creditable service, whichever comes first." N.J.S.A. 43:16A-5(1).

The system is designed for individuals to pay into the fund from their individual wages, from which they will receive a service retirement allowance after reaching the requisite age or years of service. However, this formula does not work for individuals who become disabled on the job prior to reaching the length of service or age requirements. As a result, the legislature designated different statutory sections for employees disabled while on the job. Without the independent treatment of a separate statute, disabled employees would not be entitled to a pension for failure to meet the service requirements.

N.J.S.A. 43:16A-6 governs ordinary disability retirement benefits, which arise when a member under fifty-five (and thus ineligible for service retirement) with at least four years of service becomes mentally or physically incapacitated and unable

to perform his or her duties. Although an employee seeking ordinary disability retirement must have a minimum of four years of service, N.J.S.A. 43:16A-6(1), the employee is retiring due to a disability, not his or her length of service or age. N.J.S.A. 43:16A-7 controls accidental disability retirement, for which there is no years of service or age requirement; rather, any member may qualify so long as he or she satisfies the statutory criteria. N.J.S.A. 43:16A-7(1). This is why accidental disability retirees receive an "enhanced benefit" of two-thirds of their salary at the time of the occurrence of the accident, whereas ordinary retirees receive one-half of their final salary if they retire at the earliest time. Sternesky, supra, 396 N.J. Super. at 300. In short, ordinary retirement is linked to a member's age or years of service, whereas disability retirement is awarded because of an employee's disability.

Chapter 78 was passed in recognition of "serious fiscal issues" confronting the State and the underfunding of the pension system. DePascale v. State, 211 N.J. 40, 63 (2012). Chapter 78 increased required contributions from employees and suspended cost-of-living adjustments. The Senate Budget and Appropriations Committee Statement, dated June 16, 2011, elaborates on the legislative intent of Chapter 78. The committee explained that:

This bill makes various changes to the manner in which . . . the Police and Firemen's Retirement System (PFRS) . . . operate[s] and to the benefit provisions of th[e] system[].

. . . .

This bill requires <u>all public employees</u> and <u>certain public retirees</u> to contribute toward the cost of health care benefits coverage based upon a percentage of the cost of coverage.

. . . .

<u>Similar provisions in the bill apply to retirees of the State</u> . . . and units of local government <u>who accrue 25 years of service after the bill's effective date</u>, or on or after the expiration of an applicable collective bargaining agreement in effect on that date, <u>and retire after that</u>, who will be required to contribute a percentage of the cost of health care benefits coverage in retirement, but as based on their retirement benefit. These provisions will not apply to public employees who, on the effective dated [sic] the bill, have 20 or more year[s] of service in one or more State or locally-administered retirement systems. A 1.5% "floor", for those retirees to whom the 1.5% contribution in current law applies, will also be applicable to these retirees.

[<u>S.B. No.</u> 2937, at 118, 120-21 (June 16, 2011) (emphasis added).]

The Senate Committee's Statement bolsters the conclusion that Chapter 78 applies only to service retirees and not to disability retirees. The Statement makes clear the new provisions apply to active public employees and retirees "who

accrue 25 years of service after the bill's effective date," while exempting those who "have 20 or more year[s] of service" by the bill's effective date. Ibid. As aforementioned, disability retirement is not predicated on length of service or age, and the Senate Committee's omission of disability retirees suggests the Legislature's intent was to mandate "regular" retirees based on service credit and age to contribute towards their health care benefits via withholdings from their pension benefits.

Examining the PFRS statute in its totality, including the amendments provided in Chapter 78, leads to the conclusion that the Legislature sought to have active public employees contribute to the cost of their healthcare premiums, as well as retiring employees who will accrue twenty-five years of service after Chapter 78 became effective, carving out those who already accumulated twenty years of service as of the effective date. This system encapsulates employees on the ordinary course for retirement. Public employees who retire on disability benefits, like Spallina, do not retire pursuant to years of service credit or reaching a certain age, which is why disability retirees are accorded separate statutory treatment. Instead, these employees retire due to a disability, which, as the Senate Committee

Statement suggests, places them outside of the scope of Chapter 78.

We consider as further insight into the issue on appeal a letter from the Assistant Director of New Jersey Public Employees' Health Benefit Programs, Division of Pensions and Benefits. See Paterson PBA Local 1 v. City of Paterson, 433 N.J. Super. 416, 429 (App. Div. 2013) (allowing the court to consider agency answers to "FAQs" as a "practical interpretation of the statute," even though they were "not the equivalent of an administrative agency's interpretation"). The Assistant Director explained in a letter dated July 8, 2013 that "[s]ince Chapter 78 refers to individuals who attain the required years of pension membership credit as outlined in N.J.S.A. 52:14-17.28, [Chapter 78] appears to intentionally exclude those who retire on a disability retirement benefit." Similarly, the New Jersey Division of Pensions and Benefits published "Fact Sheet #11," which consistently interprets Chapter 78 by stating, in pertinent part, "[l]ocal employees who retire on an approved disability retirement . . . are not subject to the contribution provisions of Chapter 78." This extrinsic evidence further supports our conclusion that Chapter 78 does not encompass disability retirees.

### III.

In conclusion, the plain language of Chapter 78 exempts disability retirees from health insurance premium contributions. Chapter 78's legislative history, as well as agency interpretations, further bolster our conclusion.

As a result, we reverse the order under review, remand, and direct the judge to address plaintiffs' contention, raised in the complaint but not adjudicated, that Spallina is entitled to reimbursement for prior health insurance premium contributions. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION