**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0516-15T4

DONNA PLATT,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, PUBLIC
EMPLOYEES' RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Argued April 27, 2017 - Decided June 19, 2017

Before Judges Lihotz, O'Connor and Mawla.

On appeal from the Board of Trustees, Public
Employees' Retirement System, Docket No. 2-
931821.

Stuart A. Platt argued the cause for appellant
(Platt & Riso, P.C., attorneys; Mr. Platt, on
the brief).

Jeff S. Ignatowitz, Deputy Attorney General,
argued the cause for respondent (Christopher
S. Porrino, Attorney General, attorney;
Melissa H. Raksa, Assistant Attorney General,
of counsel; Mr. Ignatowitz, on the brief).

PER CURIAM

Petitioner Donna Platt appeals from the August 19, 2015 final determination of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS), denying her request for pension participation and accrual of service credit, following the adoption of N.J.S.A. 43:15A-7.2. The statute provides individuals engaged under a professional services contract as defined in the Local Public Contracts Law (LPCL), N.J.S.A. 40A:11-1 to -51, are ineligible for PERS enrollment as of January 1, 2008. N.J.S.A. 43:15A-7.2(a). The Board adopted and affirmed the initial decision issued by an Administrative Law Judge (ALJ), who concluded Platt, appointed as a part-time municipal prosecutor in four municipalities, was not a municipal employee, but serving pursuant to a public services contract, and her engagement was not service eligible for PERS credit.

On appeal, Platt argues the Board erroneously applied N.J.S.A. 43:15A-7.2 to the facts and circumstances presented because she was an employee eligible to participate in PERS, despite the professional nature of the legal services she provided. We disagree and affirm.

I.

Platt first enrolled in PERS in January 1993. In 2007, Platt was reappointed as the municipal prosecutor in Winslow Township (Winslow), the Borough of Hi-Nella (Hi-Nella), the Borough of

2

Chesilhurst (Chesilhurst), the Borough of Berlin (Berlin), and the Township of Berlin. She continued PERS participation based on these appointments.

In March 2010, the Division of Pensions and Benefits (Division) commenced an investigation, which examined Platt's eligibility to continue her PERS participation. The Division's May 16, 2012 letter decision concluded Platt was an employee of the Township of Berlin and, based on that employment she remained eligible to participate in PERS. However, the Division also concluded Platt was engaged under a professional services contract in the remaining four municipalities, rendering her ineligible for PERS participation and service credit.

When the Board concurred with the assessment Platt's continued service as the municipal prosecutor in the identified municipalities was not pension creditable, she challenged the determination, prompting transfer of the matter to the Office of Administrative Law for review as a contested case.[1] See N.J.S.A. 52:14F-1 (establishing the Office of Administrative Law for independent review of contested administrative matters); see also

---

[1] The Board challenged only Platt's participation in PERS after the date Chapter 92 became effective. To be clear, our decision does not affect Platt's entitlement to any benefits resulting from contributions she made to PERS prior to Chapter 92 becoming effective on July 1, 2008.

A-0516-15T4

N.J.S.A. 52:14B-10 (establishing procedures for review by ALJs). Following a three-day hearing, written summations were submitted and the record closed.

The ALJ's Initial Decision, issued on November 3, 2014, analyzed Platt's specific relationship, duties, circumstances of appointment, and work conditions as the municipal prosecutor in each of the four designated municipalities. Included was testimonial evidence from Platt and others, as well as thirty-three joint exhibits and thirty-eight documents separately presented by the respective parties.

Although the detail of Platt's respective appointments varied, the ALJ found the process was substantively the same, namely, in each instance Platt was appointed to provide professional services and was engaged under a professional services contract as defined in the LPCL. Therefore, the appointment could not result in PERS participation, as of January 1, 2008, pursuant to N.J.S.A. 43:15A-7.2(a).

Platt filed exceptions to the ALJ's decision. Following the Board's initial review, a limited remand was ordered and the record reopened. Platt presented testimony from Chesilhurst's Deputy Borough Clerk, who discussed Borough resolutions appointing Platt as municipal prosecutor, including Resolution 2011-12, which designated the appointment of "Donna Sigel Platt, P.C." Further,

the remand hearing corrected the date of Platt's ineligibility, as the ALJ's initial decision mistakenly recited "January 1, 2007." Otherwise, the decision on remand did not alter the conclusion Platt remained ineligible for PERS enrollment after January 1, 2008.

The Board considered Platt's appeal challenging the findings and conclusions of the ALJ. Following its review, the Board adopted the findings, as amended on remand, and rendered its conclusion in an August 20, 2015 final decision. This appeal ensued.

## II.

The Legislature adopted a publicly funded pension system covering not only State employees, but qualifying municipal employees as well. For these employees, pension statutes provide "deferred compensation for services rendered." Uricoli v. Bd. of Trs., 91 N.J. 62, 71 (1982). Thus, a grant of retirement security attached to public employment has been viewed as "encouraging qualified individuals to enter and remain in public service." Ibid. (quoting Masse v. Pub. Emp. Ret. Sys., 87 N.J. 252, 261 (1981)).

Decreases in State revenue and other policy considerations led to the adoption of various statutory amendments modifying the state pension system. The Governor's Executive Order No. 39,

signed on May 25, 2005, created the Benefits Review Task Force

(Task Force) assigned to

> "[e]xamin[e] the current laws, regulations, procedures and agreements governing the provision of employee benefits to State and local government workers[,]" and "recommend[] changes to the laws, regulations, procedures and agreements designed to control the costs of such benefits to the State's taxpayers, while ensuring the State's public employees a fair and equitable benefit system."
>
> [N.J. Benefits Review Task Force, <u>Report of the Benefit Review Task Force to Acting Governor Richard J. Codey</u> 1 (Dec. 1, 2005).][2]

The Task Force recommended reform of the pension structure, in part, to "preserv[e] the integrity of the pension funds for those who have dedicated their lives to public service[.]" <u>Id.</u> at 18. Apt to this matter, the Task Force found:

> Professional services vendors, such as municipal attorneys, . . . who are retained under public contracts approved by an appointing agency should not be eligible for a pension. In our opinion, these employees simply do not meet the original purpose of the public retirement plan and should not be eligible to participate in any pension plan.
>
> [<u>Ibid.</u>]

Thereafter, a Special Session Joint Legislative Committee on Public Employee Benefits Reform was formed to consider the Task

---

[2]   Report can be found at http://www.state.nj.us/benefitsreview/final_report.pdf.

Force's recommendations. Regarding professional services contracts the Committee proposed "the enactment of legislation to exclude all professional service contractors from membership in PERS." Joint Legislative Committee, <u>Public Employee Benefits Reform: Final Report</u> 83 (Dec. 1, 2006), http://www.njleg.state.nj. us/PropertyTaxSession/OPI/jcpe_final_report.pdf.

Subsequently, the Legislature enacted Public Law 2007, <u>L.</u> 2007, <u>c.</u> 92 (Chapter 92), which introduced dramatic changes to the public pension system. Codified at <u>N.J.S.A.</u> 43:15C-1 to -15, Chapter 92 created the Defined Contributions Retirement Program (DCRP), as an alternative to PERS, which became effective on July 1, 2007.

The reforms in Chapter 92 also included the enactment of related statutes, directed to modifying PERS. At issue is <u>N.J.S.A.</u> 43:15A-7.2, which changed eligibility rules for pension participation by individuals serving in certain government positions, pursuant to professional services contracts or as independent contractors. Addressing providers of professional services, <u>N.J.S.A.</u> 43:15A-7.2 states, in pertinent part:

> a. A person who performs professional services for a political subdivision of this State . . . under a professional services contract awarded in accordance with [<u>N.J.S.A.</u> 40A:11-5], <u>N.J.S.[A.]</u> 18A:18A-5 or [<u>N.J.S.A.</u> 18A:64A-25.5], on the basis of performance of the contract, shall not be eligible for

membership in the Public Employees' Retirement System. A person who is a member of the retirement system as of the effective date of [Chapter 92] shall not accrue service credit on the basis of that performance following the expiration of an agreement or contract in effect on the effective date. . . . No renewal, extension, modification, or other agreement or action to continue any professional services contract in effect on the effective date of [Chapter 92] beyond its current term shall have the effect of continuing the membership of a person in the retirement system or continuing the accrual of service credit on the basis of performance of the contract.

b. A person who performs professional services for a political subdivision of this State . . . shall not be eligible, on the basis of performance of those professional services, for membership in the Public Employees' Retirement System, if the person meets the definition of independent contractor as set forth in regulation or policy of the federal Internal Revenue Service for the purposes of the Internal Revenue Code. Such a person who is a member of the retirement system on the effective date of [Chapter 92] shall not accrue service credit on the basis of that performance following the expiration of an agreement or contract in effect on the effective date.

Nothing contained in this subsection shall be construed as affecting the provisions of any agreement or contract of employment in effect on the effective date of [Chapter 92], whether or not the agreement or contract specifically provides by its terms for membership in the retirement system. No renewal, extension, modification, or other agreement or action to continue any such agreement or contract in effect on the effective date of [Chapter 92] beyond its current term shall have the effect

A-0516-15T4

of continuing the membership of a person in the retirement system or continuing the accrual of service credit on the basis of performance of the agreement or contract.

As used in this subsection, the term "professional services" shall have the meaning set forth in [N.J.S.A. 40A:11-2].

[N.J.S.A. 43:15A-7.2.]

Once Chapter 92 was enacted, the Division published Local Finance Notices (LFN), issuing specific guidance to local officials regarding the application of these pension reforms. Highlighting the change in the treatment of persons appointed who provide professional services, LFN 2007-28, issued on December 29, 2007, identified attorneys as typically falling within the category of persons engaged pursuant to a professional services contract and noted:

Individuals that perform professional services under a professional service contract with that local unit cannot be members of PERS or DCRP; and

A professional who is an employee must be a bona fide employee that meets the Internal Revenue Service "employee test" in order to be a member of PERS for those services.

[N.J. Dept. of Cmty. Affairs, Local Finance Notice 2007-28 7-8 (Dec. 29, 2007), http:// www.state.nj.us/dca/divisions/dlgs/lfns.]

Also, LFN 2008-10, issued April 28, 2008, added: "[The statute] restricts individuals receiving compensation under professional

A-0516-15T4

service resolutions from serving as employees and requires application of an Internal Revenue Service test to ensure the individual is a legitimate employee." N.J. Dept. of Cmty. Affairs, Local Finance Notice 2008-10 1 (Apr. 28, 2008), http://www.state.nj.us/dca/divisions/dlgs/lfns/08/2008-23.doc-180.5KB.[3]

In 2012, the Office of the New Jersey Comptroller issued an investigative report, which found "an overwhelming majority" of local units failed to remove independent contractors from PERS. State of N.J. Office of the State Comptroller, Investigative Report: Improper Participation by Professional Service Providers in the State Pension System 8 (July 17, 2012), http://nj.gov/comptroller/news/docs/pensions_report.pdf. The Report reiterated the Chapter 92 mandate: "non-employee professional service contractors be removed from PERS[,]" including those "[p]rofessionals providing services pursuant to a professional services contract . . . ." Id. at 3. This report prompted the Division's examination of Platt's continued PERS participation and the ensuing matter.

---

[3] LFN 2008-10 notes a municipal prosecutor, pursuant to N.J.S.A. 2B:25-1, who is "employed as bona fide legitimate employee and not employed pursuant to a professional services resolution" may qualify for Defined Contribution Retirement Program participation. This is not an issue presented in this appeal.

III.

Platt's primary challenge on appeal is whether N.J.S.A. 43:15A-7.2, proscribes her participation in PERS. This question requires statutory interpretation, which ultimately is a judicial responsibility. We accord no deference to the Board's interpretive conclusions. See Brick Twp. PBA Local 230 v. Twp. of Brick, 446 N.J. Super. 61, 65 (App. Div. 2016).

In interpreting a statute, we recognize our paramount goal is to ascertain the Legislature's intent, and "generally[] the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). "We ascribe to the statutory words their ordinary meaning and significance . . . ." IE Test, LLC v. Carroll, 226 N.J. 166, 182 (2016) (quoting DiProspero, supra, 183 N.J. at 492). Only when the statutory language is ambiguous and yields more than one plausible interpretation do we turn to extrinsic sources. DiProspero, supra, 183 N.J. at 492-93.

On appeal, Platt reiterates her claim Chapter 92 is unconstitutional as applied to her circumstances. Further, she urges the Board erred in determining she was ineligible to participate in PERS based on N.J.S.A. 43:15A-7.2, because the circumstances here show she performed services for the identified municipalities as an employee.

In reviewing an administrative agency's determination, we give due deference to the agency's findings of fact and will not reverse the agency's decision unless we conclude it was arbitrary, capricious, or unreasonable. Prado v. State, 186 N.J. 413, 427 (2006). Platt, as the party challenging the administrative decision, "has a heavy burden of . . . demonstrating that the decision was arbitrary, unreasonable or capricious." In re Tax Credit Application of Pennrose Props. Inc., 346 N.J. Super. 479, 486 (App. Div. 2002).

A.

Platt's constitutional challenge suggests the application of Chapter 92 to her case "has the effect of detrimentally altering her retirement benefit as an active member of PERS," violating "the federal and state constitutional proscriptions against the impairment of the obligation of contracts." She notes her acceptance of municipal employment at a lower hourly rate than she could have earned in private practice was because of the deferred pension compensation benefit. Platt also suggests because she was a vested member in PERS when Chapter 92 was enacted, she "had a right to rely upon her yearly pension statements as well as the certifying officer's decision in each municipality in which she was employed" attesting to her PERS eligibility. We reject these contentions.

The Contract Clause states: "No State shall . . . pass any . . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Similarly, New Jersey's Constitution guarantees: "The Legislature shall not pass any . . . law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made." N.J. Const. art. IV, § 7, ¶ 3; see, e.g., Berg v. Christie, 225 N.J. 245, 258-59 (2016); Burgos v. State, 222 N.J. 175, 193 (2015), cert. denied, __ U.S. __, 136 S. Ct. 1156, 194 L. Ed. 2d 174 (2016).

"Contract impairment claims brought under either constitutional provision entail an analysis that first examines whether a change in state law results in the substantial impairment of a contractual relationship and, if so, then reviews whether the impairment nevertheless is 'reasonable and necessary to serve an important public purpose.'" Berg, supra, 225 N.J. at 259 (quoting U.S. Tr. Co. of N.Y. v. New Jersey, 431 U.S. 1, 25, 97 S. Ct. 1505, 1519, 52 L. Ed. 2d 92, 112 (1977)). The Court has advised the analysis requires "three inquiries." Berg, supra, 225 N.J. at 259. "Legislation unconstitutionally impairs a contract when it (1) 'substantially impair[s] a contractual relationship,' (2) 'lack[s] a significant and legitimate public purpose,' and (3) is 'based upon unreasonable conditions and . . . unrelated to

13

appropriate governmental objectives.'"  Burgos, supra, 222 N.J. at 193-94 (quoting Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 546-47 (2013) (alterations in original)).

Platt's argument requires a finding she had a contract to continue employment with each municipality under the same terms and conditions as existed prior to the adoption of Chapter 92, which includes her continuation as a member of PERS.  This argument ignores the necessity all contracts for professional attorney services are limited to one year.  See N.J.S.A. 2B:25-4(b) ("A municipal prosecutor . . . shall serve for a term of one year from the date of his or her appointment . . . .").  Contractual terms did not continue, as each year stands independently one from another.  Moreover, under the terms of Chapter 92, existing contracts were unaffected during their unexpired term, N.J.S.A. 43:15A-7.2, then new contracts, commencing after the effective date of Chapter 92, would be governed by Chapter 92.

Our Supreme Court has repeatedly recognized provisions of public employee pensions, even when eligibility is not at issue, do not constitute contractual relationships, unless explicitly stated by statute.  See Burgos, supra, 222 N.J. at 195; Spina v. Consolidated Police & Firemen's Pension Fund Comm., 41 N.J. 391, 404-05 (1964); see also Nat'l R.R. Passenger Corp. v. Atchison,

Topeka & Santa Fe Ry. Co., 470 U.S. 451, 465-66, 105 S. Ct. 1441, 1451, 84 L. Ed. 2d 432, 446 (1985) (requiring courts adjudicating Federal Contracts Clause claims not presume that a statute creates private contract rights unless "some clear indication" establishes the intent to do so).  Indeed, Chapter 92 neither altered prior PERS participation of credited service, nor did it impact a contract in force when the new legislation was adopted.  N.J.S.A. 43:15A-7.2.  Therefore, we reject any notion suggesting the change in state law, by adopting Chapter 92, resulted in a substantial impairment of an existing contractual relationship.

We also underscore the change in PERS eligibility sought to curb past abuses.  The legislation was reasonable and necessary to serve an important public purpose, and responded to "a series of Executive and Legislative policy decisions — which the State later characterized as short sighted - result[ing] in underfunding of the [State] pension system."  Berg, supra, 436 N.J. Super. at 236, rev'd on other grounds, 225 N.J. at 253.  Importantly, our jurisprudence concludes contractual impairment does not violate the constitutional contract clause "if the governmental action has a 'significant and legitimate public purpose,' is based upon reasonable conditions, and is related to 'appropriate governmental objectives.'"  Borough of Seaside Park v. Comm. of N.J. Dep't of Educ., 432 N.J. Super. 167, 216 (App. Div.), certif. denied, 216

N.J. 367 (2013) (quoting State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 64 (1991)); see also U.S. Tr. Co. of N.Y., supra, 431 U.S. at 25, 97 S. Ct. at 1519, 52 L. Ed. 2d at 112.

As to the impairment of Platt's expectation that she should be permitted to continue participating in PERS because she was vested in 2007 and "Chapter 92 has the effect of 'snatching' annual compensation and service years from [her] ultimate retirement benefit," we conclude the argument lacks sufficient merit to warrant discussion in our opinion. R. 2:11-3(e)(1)(E).

Pension eligibility itself "is not to be liberally permitted." Smith v. State, Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007). "Instead, in determining a person's eligibility to a pension, the applicable guidelines must be carefully interpreted so as not to 'obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und.'" Ibid. (quoting Chaleff v. Teachers' Pension & Annuity Fund Trs., 188 N.J. Super. 194, 197 (App. Div.), certif. denied, 94 N.J. 573 (1983) (alteration in original)); see also Francois v. Bd. of Trs., 415 N.J. Super. 335, 350 (App. Div. 2010). Accordingly, we reject as specious Platt's argument she negotiated PERS pension benefits as part of her professional services contracts.

Based on our analysis, we conclude, as did the Board in adopting the ALJ's initial decision modified after remand, Chapter 92 does not violate the Contracts Clause of the Federal Constitution or the parallel guarantee included in the State constitution. Platt's arguments to the contrary are rejected.

B.

Platt next argues her entitlement to continued PERS eligibility was shown because her services as a part-time municipal prosecutor were not performed pursuant to a disqualifying professional services contract as required by N.J.S.A. 43:15A-7.2(a). She concedes any individual providing professional services pursuant to a "professional services contract" is not eligible for PERS under N.J.S.A. 43:15A-7.2(a). Further she admits her role as municipal prosecutor provided professional services as defined in N.J.S.A. 40A:11-2(6).[4] However, Platt disputes she

---

[4]    N.J.S.A. 40A:11-2(6) provides:

> "Professional services" means services rendered or performed by a person authorized by law to practice a recognized profession, whose practice is regulated by law, and the performance of which services requires knowledge of an advanced type in a field of learning acquired by a prolonged formal course of specialized instruction and study as distinguished from general academic instruction or apprenticeship and training. Professional services may also mean services

was appointed pursuant to a professional services contract.[5] Rather, she claims she was a bona fide employee for each municipality, as demonstrated by applying the "IRS 20 Factor Test of Employment Status," thus defeating PERS exclusion in N.J.S.A. 43:15A-7.2(b). We are not persuaded.

Platt's contention that no municipal prosecutors could be eligible for PERS participation and credit based upon the Board's application of Chapter 92 is belied by the Board finding Platt's employment with Berlin Township was qualifying. The distinguishing factor is whether the professional services are provided pursuant to a professional services contract in accordance with N.J.S.A. 40A:11-5 of the LPCL.

We note, N.J.S.A. 43:15A-7.2(a) specifically references N.J.S.A. 40A:11-5, which permits a municipality to negotiate and award a contract for professional services in excess of the $17,500 bid threshold, see N.J.S.A. 40A:11-3(a), by resolution, without public advertising for bids and bidding. In doing so,

_____

> rendered in the provision or performance of goods or services that are original and creative in character in a recognized field of artistic endeavor.

[5] Platt specifically asserts she never had a "professional services contract" with Hi-Nella and Chesilhurst; did not have such a contract with Winslow in 2013 and 2014; and signed explicit employment agreements with Berlin in 2008 and 2009 and with Winslow from 2009 through 2012.

[t]he governing body shall in each instance state supporting reasons for its action in the resolution awarding each contract and shall forthwith cause to be printed once, in the official newspaper, a brief notice stating the nature, duration, service and amount of the contract, and that the resolution and contract are on file and available for public inspection in the office of the clerk of the county or municipality, or, in the case of a contracting unit created by more than one county or municipality, of the counties or municipalities creating the contracting unit[.]

[N.J.S.A. 40A:11-5(1)(a)(i).]

Judged against these standards, we conclude the factual findings by the ALJ, adopted by the Board, demonstrate Platt's appointment as municipal prosecutor met the definition of a "professional services contract," under the LPCL. We briefly address the evidence regarding Platt's services in the four municipalities under review, which support this conclusion.

The documents regarding service in Winslow include contracts, requests for proposal (RFP), proof of publication, the Township Committee's resolutions specifically referencing the LPCL and compliance with N.J.S.A. 19:44A-20.5, mandating a fair and open process and prohibiting quid pro quo patronage or what is commonly labeled "pay-to-play."

We reject the suggestion the municipality believed Platt was its employee; we do not agree the title to an earlier contract,

labeled "Employment Agreement" is controlling; nor is payment of the annual contract salary through payroll dispositive. We look past the form employed and examine the substance of the arrangement. Chapter 92 makes clear labeling the engagement an employment contract will not save an ineligible individual from the preclusive effect of the statute. See N.J.S.A. 43:15A-7.2(a) ("No renewal, extension, modification, or other agreement or action to continue any professional services contract in effect on the effective date of [Chapter 92] beyond its current term shall have the effect of continuing the membership of a person in the retirement system or continuing the accrual of service credit on the basis of performance of the contract.").

Here, the agreement's terms incorporate the RFP issued pursuant to the LPCL. Further, Platt complied with the requirements of the RFP by submitting required items such as proof of licensing and insurance.

In Berlin Borough, provisions of the annual contracts appointing Platt as municipal prosecutor referenced the LPCL and stated the provision of attorney services were professional services. Correspondence from the Borough Solicitor to Platt identified the agreement as a professional services contract under the LPCL, and stated it complied with an open and public process.

We also find unavailing Platt's argument that the absence of a written "professional services contract" in Hi-Nella and Chesilhurst defeats application of N.J.S.A. 43:15A-7.2(a). A contract is defined in the LPCL as

> any agreement, including but not limited to a purchase order or a formal agreement, which is a legally binding relationship enforceable by law, between a vendor who agrees to provide or perform goods or services and a contracting unit which agrees to compensate a vendor, as defined by and subject to the terms and conditions of the agreement. A contract also may include an arrangement whereby a vendor compensates a contracting unit for the vendor's right to perform a service, such as, but not limited to, operating a concession.
>
> [N.J.S.A. 40A:11-2(3)(21).]

Thus, the lack of a writing mentioned in N.J.S.A. 40A:11-5(1)(a)(i) does not defeat the professional engagement from qualifying as a professional services contract as used in Chapter 92. Cf. Kress v. LaVilla, 335 N.J. Super. 400, 409-11 (App. Div. 2000) (enforcing agreement under theory of "quasi-contract" to prevent unjust enrichment where the requirements of N.J.S.A. 40A:11-5 were not met), certif. denied, 168 N.J. 289 (2001).

Other documents from Hi-Nella, referenced in the ALJ's findings, included municipal resolutions confirming Platt's appointment, public notices reappointing Platt under a "professional services contract," and correspondence she sent

accepting reappointment. All of these reinforced Platt was providing professional legal services under a professional services contract.[6]

In seeking its municipal prosecutor, in some years, Chesilhurst issued an RFP while in others the municipality published a notice for solicitation of qualification for professional services under a fair and open process, citing the no bidding professional services provision of the LPCL, N.J.S.A. 40A:11-5. In recent years, the referenced appointee was "Donna Sigel Platt, P.C." undercutting any suggestion Platt individually was a municipal employee.

The record sufficiently shows Platt accepted these appointments, awarded without bidding, and entered into contracts to perform "professional services," under the authority of the LPCL, N.J.S.A. 40A:11-5. A professional providing services pursuant to a professional service contract is no longer eligible for participation in PERS. N.J.S.A. 43:15A-7.2(a). We conclude the Board did not err in rendering its determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] We note not all of these documents were included in the record on appeal. We rely on the agency record referencing them.

A-0516-15T4